# EXHIBIT I

Lycoming County Prothonotary Civil E-Filed - 13 Nov 2023 02:51:45 PM

IN THE COURT OF COMMON PLEAS OF LYCOMING COUNTY, PENNSYLVANIA

| | |
|---|---|
| INTERNATIONAL DEVELOPMENT CORPORATION, | CIVIL DIVISION |
| Plaintiff, | NO. 19-00,640 |
| v. | |
| SWN PRODUCTION COMPANY, LLC, | **COMPLAINT** |
| Defendant. | |

Filed on behalf of Plaintiff,
International Development Company, LLC f/k/a
International Development Corporation

Counsel of record for this party:

Robert J. Burnett, Esq.
PA I.D.# 76734

Brendan A. O'Donnell, Esq.
PA I.D.# 309007

HOUSTON HARBAUGH, P.C.
Firm #371
Three Gateway Center, 22nd Floor
Pittsburgh, PA 15222

(412) 281-5060

**JURY TRIAL DEMANDED**

{CLIENT WORK/37902/0011 H2161985:2}

Lycoming County Prothonotary Civil E-Filed - 13 Nov 2023 02:51:45 PM

IN THE COURT OF COMMON PLEAS OF LYCOMING COUNTY, PENNSYLVANIA

INTERNATIONAL DEVELOPMENT CORPORATION,

        Plaintiff,

v.

SWN PRODUCTION COMPANY, LLC,

        Defendant.

CIVIL DIVISION

NO. 19-00,640

## **NOTICE TO DEFEND**

YOU HAVE BEEN SUED IN COURT. IF YOU WISH TO DEFEND AGAINST THE CLAIMS SET FORTH IN THE FOLLOWING PAGES, YOU MUST TAKE ACTION WITHIN TWENTY (20) DAYS AFTER THIS COMPLAINT AND NOTICE ARE SERVED, BY ENTERING A WRITTEN APPEARANCE PERSONALLY OR BY ATTORNEY AND FILING IN WRITING WITH THE COURT YOUR DEFENSES OR OBJECTIONS TO THE CLAIMS SET FORTH AGAINST YOU. YOU ARE WARNED THAT IF YOU FAIL TO DO SO THE CASE MAY PROCEED WITHOUT YOU AND A JUDGMENT MAY BE ENTERED AGAINST YOU BY THE COURT WITHOUT FURTHER NOTICE FOR ANY MONEY CLAIMED IN THE COMPLAINT OR FOR ANY CLAIM OR RELIEF REQUESTED BY THE PLAINTIFF. YOU MAY LOSE MONEY OR PROPERTY OR OTHER RIGHTS IMPORTANT TO YOU.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.

IF YOU CANNOT AFFORD A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ON AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.

IF YOU DO NOT HAVE A LAWYER CONTACT:

Pennsylvania Bar Association
Lawyer Referral Service
100 South Street
PO Bo 186
Harrisburg, PA 17108-0186
Telephone (800) 692-7375

Lycoming County Prothonotary Civil E-Filed - 13 Nov 2023 02:51:45 PM

IF YOU CANNOT AFFORD A LAWYER, YOU MAY BE ELIGIBLE FOR LEGAL AID
THROUGH:

North Penn Legal Services
Penn Tower Building
25 W. Third Street, Suite 400
Williamsport, PA 17701
Telephone (570) 323-8741

{CLIENT WORK/37902/0011 H2161985:2}

Lycoming County Prothonotary Civil E-Filed - 13 Nov 2023 02:51:45 PM

IN THE COURT OF COMMON PLEAS OF LYCOMING COUNTY, PENNSYLVANIA

INTERNATIONAL DEVELOPMENT
CORPORATION,

        Plaintiff,

v.

SWN PRODUCTION COMPANY, LLC,

        Defendant.

CIVIL DIVISION

NO. 19-00,640

## COMPLAINT

AND NOW, comes the Plaintiff, International Development Company, LLC f/k/a International Development Corporation, by and through its undersigned counsel, Robert J. Burnett, Esquire, Brendan A. O'Donnell, Esquire, and Houston Harbaugh, P.C., and files the within Complaint in Civil Action against the above-named Defendant and, in support thereof, avers as follows:

### PARTIES

1.     Plaintiff International Development Company, LLC f/k/a International Development Corporation ("IDC") is a Maryland limited liability company with an address of 50170 Long Neck Road, Scotland, Maryland 20687.

2.     Defendant SWN Production Company, LLC ("SWN") is a Texas limited liability company with an address of 10000 Energy Drive, O'Beirne Spring, Texas 77389.

### FACTS

3.     IDC and SPC are parties to a December 1, 2006 oil and gas lease executed between IDC, as lessor, and Virginia Energy Consultants, LLC, as lessee (the "2006 Lease"). A

Lycoming County Prothonotary Civil E-Filed - 13 Nov 2023 02:51:45 PM

Memorandum of the 2006 Lease was recorded at Lycoming County Deed Book 6197, Page 327 and a copy of the 2006 Lease is attached hereto as **Exhibit A**.

4.      The 2006 Lease and its amendments cover approximately 40,000 gross acres of oil and gas, wherein IDC owns approximately 25,000 net oil and gas acres. These properties are generally located in the north-central and northeastern areas of Lycoming County, Pennsylvania (the "Subject Leasehold").

5.      The 2006 Lease was modified through a February 13, 2009 Amendment and Restatement of Oil and Gas Lease between IDC and Virginia Energy Consultants, LLC (the "First Amendment"), that was effective December 1, 2006. The First Amendment was recorded at Lycoming County Deed Book 6561, Page 155 and a copy of the First Amendment is attached hereto as **Exhibit B**.

6.      The 2006 Lease was further modified through a February 12, 2009 Second Amendment and Restatement of Oil and gas Lease between IDC and Quest Eastern Resource, LLC (the "Second Amendment") that was effective December 1, 2006. The Second Amendment was recorded at Lycoming County Deed Book 6561, Page 147 and a copy of the Second Amendment is attached hereto as **Exhibit C**.

7.      The 2006 Lease further modified by an October 2009 Amendment and Restatement (the "Third Amendment") that was effective December 1, 2006. The Second Amendment was recorded at Lycoming County Deed Book 7045, Page 43 and a copy is attached hereto as **Exhibit D**.

***Royalties***

8.      The Third Amendment to the 2006 Lease was:

Intended as a memorandum designed to combine and restate the terms and provisions set forth and amended in the Lease, First Amendment and Second

Amendment by and between International Development Corporation and Virginia Energy Consultants, LLC and all successor Lessees to VEC. The Lessor and the Lessee herein hereby amend the Lease. In the event there are provisions in aforesaid documents which conflict with this Restatement, the provisions in this document shall control and shall reflect the true intent of the parties herein.

*See,* Exhibit D.

9.      Section 1 of the Third Amendment to the 2006 Lease identifies that IDC ". . . grants, leases and lets exclusively to Lessee the following described land, hereinafter call the leased premises [. . . ] for the purpose of exploring for, developing, producing and marketing oil and gas, along with all hydrocarbon and nonhydrocarbon substances produced in association therewith (collectively, the "Oil and Gas Substances"). *See,* Exhibit D at § 1.

10.     SWN holds a lessee's interest in the 2006 Lease as to parts of the Subject Leasehold. After assignments of interests in the Subject Leasehold, IDC avers that SWN holds the lessee's interest in approximately 22,000 gross acres of the Subject Leasehold.

11.     SWN has drilled wells in the Subject Leasehold and produces oil and gas from the Subject Leasehold.

12.     SWN pays royalties to IDC for oil and gas production from the Leasehold.

13.     Section 3 of the Third Amendment to the 2006 Lease sets the royalty, stating, in relevant part, that:

> For all Oil and Gas Substances, that are produced and sold from the leased premises, Lessor shall receive as its royalty one eighth (1/8th) of the sales proceeds actually received by Lessee from the sale of such production, less this same percentage share of all severance and ad valorem taxes, free and clear of all Post Production Costs. As used in this provision, Post Production Costs shall mean (i) all losses of produced volumes (whether by use as fuel, line loss, flaring, venting or otherwise) and (ii) all costs actually incurred by Lessee from and after the wellhead to the point of sale, including, without limitation, all gathering, dehydration, compression, treatment, processing, marketing and transportation costs incurred in connection with the sale of such production. For royalty calculation purposes, Lessee shall never be required to adjust the sales proceeds to account for the purchaser's costs or charges downstream of the point of sale.

*See,* Exhibit D at § 3.

14.     The royalties that SWN pays to IDC under the 2006 Lease (and its amendments) for oil and gas produced from the Leasehold do not identify any negative charges, costs or assessments against IDC's royalty interest.

15.     IDC receives, and has received, royalties from other operators who produce from the Leasehold subject to the 2006 Lease.

16.     Over sustained periods of time (years), these other operators have paid royalties to IDC from oil and gas produced from the Leasehold under the 2006 Lease at prices that are substantially higher than the prices in SWN's royalty statements that SWN uses to calculate and pay its royalty to IDC, demonstrating the existence of better pricing being available than SWN obtained.

17.     It is averred that the royalties that IDC receives, and has received, from SWN and other operators is based on natural gas produced from the Leasehold, being gas of similar quality, produced from the same geographic location, and the same distance to markets.

18.     Upon information and belief, Leg 300 of the Tennessee Gas Pipeline is a major interstate gas pipeline that is located north of the Leasehold. Likewise, upon information and belief, the Transco Pipeline is a major interstate gas pipeline that is located south of the Leasehold. Access to these interstate pipelines allows opportunities for parties to reach more buyers and to obtain potentially better pricing.

19.     Upon information and belief, SWN is not a shipper on either the Tennessee Gas Pipeline or the Transco Pipeline, which limits the pricing that SWN can obtain by depriving SWN of prospective buyers.

Lycoming County Prothonotary Civil E-Filed - 13 Nov 2023 02:51:45 PM

20.    IDC avers that SWN does not act, and has not acted, in good faith and with requisite diligence to market gas to obtain the best current price reasonably available, as a reasonably prudent operator exercising business judgment to obtain the best current price reasonably available would, at minimum, have the ability to ship gas on the Tennessee Gas Pipeline and the Transco Pipeline to access more customers, markets and pricing areas.

21.    Instead, IDC avers that SWN is forced to sell gas in a local market to arms-length sellers and not explore different markets, a wider universe of buyers and differential pricing and/or SWN is forced to sell gas to an affiliate entity, in a non-arms-length transaction before the gas reaches the interstate pipeline, thereby also eliminating an ability of SWN to explore different markets, a wider universe of buyers and differential pricing.

22.    IDC has informed SWN of issues with its calculation and payment of royalties and such issues have not been rectified.

### Development

23.    A critical part of the 2006 Lease was a commitment from the lessee to drill wells and to produce oil and gas, which generates a production royalty to IDC.

24.    Section 6 of the Third Amendment of the 2006 Lease was entitled "Drilling Obligations" and set forth an obligation on the lessee to drill a certain number of wells. *See,* Exhibit D at § 6.

25.    In 2015, IDC and SWN entered into a "Stipulation and Settlement Agreement".

26.    Section 9 of the Stipulation and Settlement Agreement addresses SWN's further development of the Subject Leasehold. This Section of the Stipulation and Settlement Agreement was a material part of the parties' bargain.

Lycoming County Prothonotary Civil E-Filed - 13 Nov 2023 02:51:45 PM

27.     Since the 2015 execution of the Stipulation and Settlement Agreement, SWN has only drilled three additional wells on the Subject Leasehold, being the Elly May 5H Well, the Elly May 6H Well and the Elly May 7H Well (the "Elly May Wells").

28.     The development area for the Elly May Wells includes approximately 864 acres of the approximately 22,000 acres of the Subject Leasehold that SWN possesses.

29.     In total, of the area of the Subject Leasehold that SWN holds the lessee's interest in, only approximately 9% of that acreage has been included in a producing unit.

### COUNT I
### 2006 Lease (as amended) - Breach of Contract
### Express Duty to Market

30.      Paragraphs 1 through 29 of the Complaint are incorporated herein by reference as though set forth at length.

31.     The 2006 Lease (and its amendments) imposes a contractual obligation on SWN to market the gas that is produced and sold from property subject to the Lease.

32.     This obligation to market the gas requires SWN to obtain the best current price that is reasonably available.

33.     SWN breaches, and has breached, its obligation to market the gas that it produces and sells from the Leasehold under the 2006 Lease (and its amendments).

34.     SWN's breach of its obligation to market damages IDC because it results in production royalty payments to IDC that are lower than IDC would receive had SWN satisfied its contractual obligation to market gas and obtain the best current price that is reasonably available.

35.     IDC has been damaged in an amount in excess of arbitration limits.

Lycoming County Prothonotary Civil E-Filed - 13 Nov 2023 02:51:45 PM

WHEREFORE, International Development Company, LLC f/k/a International Development Corporation, respectfully requests that this Honorable Court to enter judgment in its favor and against Defendant SWN Production Company, LLC in an amount in excess of arbitration limits, to be determined at the time of trial, together with any costs and fees available under the Lease (and its amendments) or as deemed applicable by the Court. International Development Company, LLC f/k/a International Development Corporation also seeks an accounting of Defendant SWN Production Company, LLC's oil and gas sales and royalty calculations in order for International Development Company, LLC f/k/a International Development Corporation to determine that SWN Production Company, LLC is properly calculating and accounting to International Development Company, LLC f/k/a International Development Corporation for all royalties due and owing under the 2006 Lease.

## COUNT II
### Breach of Contract
### 2006 Lease (as amended) - Implied Duty to Market
### (In the Alternative)

36.     Paragraphs 1 through 29 of the Complaint are incorporated herein by reference as though set forth at length.

37.     This Count is set forth in the alternative to Count I.

38.     Pennsylvania law imposes an obligation on SWN to market the gas that is produced and sold from property subject to the 2006 Lease.

39.     This obligation to market the gas requires SWN to obtain the best current price that is reasonably available.

40.     SWN breaches, and has breached, its obligation to market the gas that it produces and sells from the Leasehold under the 2006 Lease (and its amendments).

Lycoming County Prothonotary Civil E-Filed - 13 Nov 2023 02:51:45 PM

41.    SWN's breach of its obligation to market damages IDC because it results in production royalty payments to IDC that are lower than IDC would receive had SWN satisfied its contractual obligation to market gas and obtain the best current price that is reasonably available.

42.    IDC has been damaged in an amount in excess of arbitration limits.

WHEREFORE, International Development Company, LLC f/k/a International Development Corporation, respectfully requests that this Honorable Court to enter judgment in its favor and against Defendant SWN Production Company, LLC in an amount in excess of arbitration limits, to be determined at the time of trial, together with any costs and fees available under the Lease (and its amendments) or as deemed applicable by the Court. International Development Company, LLC f/k/a International Development Corporation also seeks an accounting of Defendant SWN Production Company, LLC's oil and gas sales and royalty calculations in order for International Development Company, LLC f/k/a International Development Corporation to determine that SWN Production Company, LLC is properly calculating and accounting to International Development Company, LLC f/k/a International Development Corporation for all royalties due and owing under the 2006 Lease.

## COUNT III
### Breach of Contract
### Stipulation and Settlement Agreement

43.    Paragraphs 1 through 29 of the Complaint are incorporated herein by reference as though set forth at length.

44.    The Stipulation and Settlement Agreement is a contract between SWN and IDC.

45.    Section 9 of the Stipulation and Settlement Agreement addressed SWN's development of the Subject Leasehold.

Lycoming County Prothonotary Civil E-Filed - 13 Nov 2023 02:51:45 PM

46.     Despite the passage of eight years since the Stipulation and Settlement Agreement, SWN has drilled just three additional wells on the Subject Leasehold, despite the Subject Leasehold being in an area with ongoing SWN development.

47.     IDC avers that SWN has breached Section 9 of the Stipulation and Settlement Agreement and damaged IDC in an amount in excess of arbitration limits.

WHEREFORE, International Development Company, LLC f/k/a International Development Corporation, respectfully requests that this Honorable Court to enter judgment in its favor and against Defendant SWN Production Company, LLC in an amount in excess of arbitration limits, to be determined at the time of trial, together with any costs and fees available under the Stipulation and Settlement Agreement or as deemed applicable by the Court.

### JURY DEMAND

A trial by jury is demanded for all claims so triable.

Respectfully submitted,

Dated: November 8, 2023                    By: _____
                                           Robert J. Burnett, Esquire
                                           PA ID No. 76734
                                           Brendan A. O'Donnell, Esquire
                                           PA ID No. 309007
                                           Houston Harbaugh, P.C.
                                           401 Liberty Avenue, 22nd Floor
                                           Pittsburgh, PA  15222
                                           (412) 281-5060
                                           Counsel for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing **Complaint** was served this

_____ day of November, 2023 via First Class United States Mail, postage pre-paid upon the

following counsel of record:

Jeremy Mercer, Esquire
Nelson Mullins
Six PPG Place, Suite 700
Pittsburgh, PA 15222

_____
Brendan A. O'Donnell

Lycoming County Prothonotary Civil E-Filed - 13 Nov 2023 02:51:45 PM

## CERTIFICATE OF COMPLIANCE

The undersigned hereby certifies that this filing complies with the provisions of the *Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts* that require filing confidential information and documents differently than non-confidential information and documents.

_____

Lycoming County Prothonotary Civil E-Filed - 13 Nov 2023 02:51:45 PM

## VERIFICATION

I, MICHAEL RAU , VICE PRESIDENT of International Development Company, LLC f/k/a International Development Corporation, hereby verify that the foregoing Complaint is based on information which International Development Company, LLC f/k/a International Development Corporation has furnished to counsel and which has been gathered by counsel in the preparation of this Complaint. The language of the foregoing Complaint is that of counsel and not that of International Development Company, LLC f/k/a International Development Corporation. I have read the foregoing Complaint and to the extent that the same is based on information that International Development Company, LLC f/k/a International Development Corporation has given to counsel, it is true and correct to the best of its knowledge, information and belief. To the extent that the language of the foregoing Complaint is that of counsel, it has relied upon counsel in making this verification. I understand that false statements herein are made subject to the penalties of 18 Pa.C.S. § 4904, relating to unsworn falsification to authorities.

Dated: 11-13-2023

By: MICHAEL RAU
Its: VICE PRESIDENT

Lycoming County Prothonotary Civil E-Filed - 13 Nov 2023 02:51:45 PM

# EXHIBIT A

Lycoming County Prothonotary Civil E-Filed 11/13 Nov 2023 02:51:45 PM



MEMORANDUM OF OIL AND GAS LEASE

The undersigned, **Internaional Development Corporation, a Colorado Corpration,** of **P.O. Box 9994, Washington, DC 20016** as Lessor and **Virginia Energy Consultants, LLC**, of **7831 Carters Run Drive, Marshall, VA 20115**, as Lessee, entered into an unrecorded Oil and Gas Lease as of the **1st** day of **December**, 2006. Said lease covers all those certain tracts of land situated in Lycoming County, Pennsylvania.

SEE ATTACHED EXHIBIT "A" FOR COMPLETE DESCRIPTION OF LEASED PREMISES

Under the terms of the aforesaid lease, the said property was leased by Lessor to Lessee for a term of **5 years** from on the date thereof and so long thereafter as oil or gas are produced from said land in paying quantities or the lease is otherwise maintained pursuant to the provisions thereof.

WITNESS:

Shannon Palmer ______ (SEAL)

WITNESS: VIRGINIA ENERGY CONSULTANTS, LLC

S ______ By ______

CORPORATE

State of Maryland :
County of St Marys ss:

I, Shannon ~~Cordier~~ Palmer, a notary of said county, do certify that Charles David Rainey, who signed the writing above bearing date the 1st day of December in the year 2006, has this day in my said county, before me, acknowledged the said writing to be the act and deed of said corporation.

Given under my hand this 15 day of November, ~~2006.~~ 2007

(SEAL)

Notary Public in and for the State of Maryland
Printed Name: Shannon Cordier
Commission Expires: June 9, 2010

SHANNON PALMER
NOTARY PUBLIC STATE OF MARYLAND
My Commission Expires June 9, 2010
NOTARY PUBLIC
Shannon Palmer

200700018532
Filed for Record in
LYCOMING COUNTY PA
ANNABEL MILLER
11-26-2007 At 04:25 pm.
LESS 30 YR 20.50
STATE TAX .00
LOCAL TAX .00
OR book 6197 Page 327 - 330

State/Commonwealth: ______ :
County of: ______ : ss:

On this the ______ day of ______, 2006 before me, ______, the undersigned officer, personally appeared ______, who acknowledged himself to be the ______ of Virginia Energy Consultants, LLC, and that as such officer, being authorized to do so, executed the foregoing instrument for the purposes therein contained by signing the name of said LLC.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

My Commission Expires: ______ (SEAL)

RECORDER OF DEEDS
ANNABEL MILLER
2007 NOV 26 P 4:24
LYCOMING COUNTY
FILED

______
(Title of Officer)

Instrument    book Page
2007000185334    6197 429
Lycoming County Prothonotary Civil e-Filed 12/13/2023 02:51:45 PM

## EXHIBIT A

# IDC OGM PROPERTIES FOR LEASE IN LYCOMING COUNTY, PA

| Warrantee Name Or Number | Township | Source Deed | | | Reservation Deed | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Date of Deed | Recorded DB at Page | Acres | Date of Deed | Recorded DB at Page | All P/O | Acres | Survyd Acres | % Own | IDC Net | Shal Lease |
| 1602 | Hewes/Fisher Pine | 08/15/08 | 203 | 269 | 890 | 08/01/25 | 260 | 277 | A | 900 | 950 | 87.5% | 831 | |
| 1605 | Hewes/Fisher Pine | 12/07/83 | 162 | 300 | 400 | | | | | | | | | |
| 1605 | Hewes/Fisher Jackson | 12/07/83 | 162 | 300 | 590 | | | | | | | | | |
| 1605 | Hewes/Fisher Pine | 06/29/98 | 209 | 34 | 400 | | | | | | | | | |
| 1605 | Hewes/Fisher Jackson | 06/29/98 | 209 | 34 | 590 | 08/01/25 | 260 | 277 | A | 817 | 817 | 87.5% | 715 | |
| 1613 | Hewes/Fisher Jackson | 12/07/83 | 162 | 300 | 165 | | | | | | | | | |
| 1613 | Hewes/Fisher Jackson | 06/29/98 | 209 | 34 | 107 | 07/10/23 | 249 | 446 | P | | 108 | 87.5% | 95 | |
| 1615 | Hewes/Fisher Jackson | 12/07/83 | 162 | 300 | 773 | | | | | | | | | |
| 1615 | Hewes/Fisher Jackson | 08/15/08 | 203 | 269 | 105 | | | | | | | | | |
| 1615 | Hewes/Fisher Jackson | 06/29/98 | 209 | 34 | 95 | | | | | | | | | |
| 1615 | Hewes/Fisher Jackson | 10/26/50 | 373 | 220 | 95 | 07/03/19 | 230 | 337 | P | 210 | 234 | 87.5% | 206 | |
| 1620 | Hewes/Fisher Cogan House | 08/15/08 | 203 | 269 | 553 | | | | | | | | | |
| 1620 | Hewes/Fisher Pine | 08/15/08 | 203 | 269 | 250 | 07/10/23 | 249 | 446 | A | 833 | 854 | 87.5% | 746 | |
| 1621 | Hewes/Fisher Cogan House | 12/07/83 | 162 | 300 | 214 | 07/10/23 | 249 | 446 | A | 1,055 | 227 | 100% | 227 | |
| 1622 | Hewes/Fisher Cogan House | 02/16/03 | 192 | 381 | 990 | 07/10/23 | 249 | 446 | A | 990 | 1,082 | 87.5% | 947 | |
| 1626 | Hewes/Fisher Cogan House | 08/15/08 | 203 | 269 | 541 | 07/10/23 | 249 | 446 | A | 1,048 | 1,048 | 87.5% | 917 | |
| 4383 | James Wilson Brown | 08/15/08 | 203 | 269 | 541 | 12/16/26 | 264 | 546 | P | 206 | 11 | 100% | 11 | |
| 4788 | Miller/Murray Jackson | 12/07/83 | 162 | 300 | 672 | | | | | | | | | |
| 4788 | Miller/Murray Jackson | 06/29/98 | 209 | 34 | 1,109 | 12/28/27 | 280 | 164 | P | | 1,127 | 100% | 1,127 | |
| 4789 | Miller/Murray Jackson | 06/29/98 | 209 | 34 | 455 | 11/28/27 | 280 | 162 | P | 131 | 138 | 100% | 138 | |
| 4789 | Miller/Murray McIntyre | 06/29/98 | 209 | 34 | 601 | 12/28/27 | 280 | 164 | P | 517 | 592 | 100% | 592 | |
| 5651 | Strawbridge, J. McIntyre | 10/26/50 | 373 | 220 | 430 | 03/28/33 | 288 | 570 | P | 1,098 | 80 | 50% | 40 | |
| 5652 | Strawbridge, J. McIntyre | 10/26/50 | 373 | 220 | 1,098 | 03/28/33 | 288 | 570 | P | 1,098 | 1,098 | 50% | 549 | |
| 5653 | Strawbridge, J. Jackson | 10/26/50 | 373 | 220 | 1,068 | 01/31/18 | 227 | 528 | A | 1,068 | 901 | 100% | 901 | |
| 5656 | Strawbridge, J. CogHs/Jack/McI | 02/16/03 | 192 | 381 | 389 | 08/31/18 | 227 | 528 | P | 404 | 404 | 100% | 404 | |
| 5657 | Strawbridge, J. McIntyre | 02/16/03 | 192 | 381 | 389 | 08/31/18 | 227 | 528 | P | 372 | 372 | 100% | 372 | |
| 5658 | Strawbridge, J. McIntyre | 12/07/83 | 162 | 300 | 248 | 08/31/18 | 227 | 528 | | | | | | |
| 5658 | Strawbridge, J. McIntyre | 05/25/03 | 183 | 326 | 134 | 08/31/18 | 227 | 528 | A | 1,166 | 202 | 100% | 202 | |
| 5660 | Strawbridge, J. McIntyre | 10/26/50 | 373 | 220 | 851 | 03/28/33 | 288 | 570 | P | 1,098 | 1,215 | 50% | 608 | |
| 5661 | Strawbridge, J. Lewis | 06/10/26 | 262 | 254 | 725 | 03/28/33 | 288 | 570 | A | 930 | 930 | 50% | 465 | |
| 5665 | Strawbridge, J. Cogan Hs/Lewis | 06/29/98 | 209 | 34 | 948 | 12/15/21 | 245 | 65 | A | 930 | 930 | 87.5% | 830 | |
| 5667 | Strawbridge, J. Lewis | 06/29/98 | 209 | 34 | 1,098 | 05/26/13 | 213 | 385 | A | 1,100 | 1,097 | 87.5% | 961 | |
| 5753 | Strawbridge, J. Lewis | 06/29/98 | 209 | 34 | 719 | 07/24/19 | 231 | 171 | A | 717 | 717 | 87.5% | 627 | X |

Instrument                          book Page
Lycoming County 2007000000533vm DR-Filed 6198 Na 2023 02:51:45 PM

| Warrantee Name Or Number | | Township | Source Deed | | | | Reservation Deed | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | Date of Deed | Recorded DB at Page | | Acres | Date of Deed | Recorded DB at Page | | All P/O | Acres | Survyd Acres | % Own | IDC Net | Shal Lease |
| Afflick | Thomas | Cascade | 04/28/50 | 369 | 317 | 408 | 03/28/33 | 288 | 570 | A | 408 | 408 | 50% | 204 | |
| Antis | Frederick | McIntyre | 06/29/98 | 209 | 34 | 408 | 12/27/23 | 250 | 335 | | 408 | 432 | 100% | 432 | |
| Barclay | George | Cascade/McIntyre | 04/28/50 | 369 | 317 | 408 | 03/28/33 | 288 | 570 | A | 408 | 462 | 50% | 231 | |
| Barker | William | Lewis | 06/10/26 | 262 | 254 | 91 | 10/25/24 | 254 | 587 | P | 126 | 126 | 87.5% | 110 | X |
| Barton | William | McNett | 06/08/28 | 271 | 174 | 408 | 03/28/33 | 288 | 570 | A | 408 | 428 | 50% | 214 | |
| Bayard | James | McIntyre | 04/28/50 | 369 | 317 | 300 | 03/28/33 | 288 | 570 | A | 408 | 430 | 50% | 215 | |
| Bayard | John | McNett | 04/28/50 | 369 | 317 | 408 | 03/28/33 | 288 | 570 | P | 408 | 202 | 50% | 101 | |
| Bayard | Steven | McNett | 04/28/50 | 369 | 317 | 408 | 03/28/33 | 288 | 570 | A | 408 | 431 | 50% | 216 | |
| Beck | Henry | Plunk Ck | 06/29/98 | 209 | 34 | 68 | 12/01/27 | 275 | 373 | P | 68 | 159 | 87.5% | 151 | X |
| Biddle | Clement | Cascade | 04/28/50 | 369 | 317 | 408 | 03/28/33 | 288 | 570 | A | 408 | 443 | 50% | 222 | |
| Brown | William | McNett | 06/29/98 | 209 | 34 | 408 | 12/27/23 | 250 | 335 | A | 460 | 460 | 100% | 460 | |
| Caldwell | David | Cascade | 04/28/50 | 369 | 317 | 413 | 03/28/33 | 288 | 570 | A | 408 | 408 | 50% | 204 | |
| Chancellor | William | McIntyre | 04/28/50 | 369 | 317 | 289 | 03/28/33 | 288 | 570 | A | 290 | 313 | 50% | 157 | |
| Cutbush | Ed | Cascade | 04/28/50 | 369 | 316 | 408 | 03/28/33 | 288 | 570 | A | 408 | 408 | 50% | 204 | |
| Dale | Samuel | Cascade | 04/28/50 | 369 | 317 | 115 | 03/28/33 | 288 | 570 | | | | | | |
| Dale | Samuel | McNett | 04/28/50 | 369 | 317 | 408 | 03/28/33 | 288 | 570 | A | 408 | 441 | 50% | 221 | |
| Delaney | Daniel | Cascade | 04/28/50 | 369 | 316 | 208 | 03/28/33 | 288 | 570 | | | | | | |
| Delaney | Daniel | McNett | 04/28/50 | 369 | 316 | 200 | 03/28/33 | 288 | 570 | A | 408 | 479 | 50% | 240 | |
| Dunlap | John #48 | McIntyre | 10/26/50 | 373 | 220 | 50 | 03/28/33 | 288 | 570 | P | 513 | 51 | 50% | 26 | |
| Fox | Joseph | Cascade | 04/28/50 | 369 | 317 | | 03/28/33 | 288 | 570 | A | 408 | 407 | 50% | 204 | |
| Francis | Teuch | Cascade | 04/28/50 | 369 | 317 | 401 | 03/28/33 | 288 | 570 | A | 408 | 408 | 50% | 204 | |
| Garrity | Mary | Cascade | 04/28/50 | 369 | 316 | 408 | 03/28/33 | 288 | 570 | A | 408 | 432 | 50% | 216 | |
| George | David | Cascade | 04/28/50 | 369 | 317 | 300 | 03/28/33 | 288 | 570 | | | | | | |
| George | David | McNett | 04/28/50 | 369 | 317 | 108 | 03/28/33 | 288 | 570 | A | 408 | 413 | 50% | 207 | |
| George | Edward | Cascade | 04/28/50 | 369 | 317 | 408 | 03/28/33 | 288 | 570 | A | 408 | 416 | 50% | 208 | |
| George | Thomas | McIntyre | 04/28/50 | 369 | 316 | 50 | 03/28/33 | 288 | 570 | | | | | | |
| George | Thomas | Cascade | 04/28/50 | 369 | 317 | 362 | 03/28/33 | 288 | 570 | A | 413 | 439 | 50% | 220 | |
| Gratz | Michael | McIntyre | 04/28/50 | 369 | 317 | 408 | 03/28/33 | 288 | 570 | A | 408 | 522 | 50% | 261 | |
| Gratz | Michael | McNett | 04/28/50 | 369 | 317 | 408 | 03/28/33 | 288 | 570 | A | 408 | 448 | 50% | 224 | |
| Gray | William | McNett | 04/28/50 | 369 | 317 | 408 | 03/28/33 | 288 | 570 | P | 408 | 408 | 50% | 204 | |
| Harmer | Josiah | Cascade | 04/28/50 | 369 | 317 | 408 | 03/28/33 | 288 | 570 | A | 408 | 423 | 50% | 212 | |
| Harrison | William | Plunketts Ck | Sullivan County tax sale | | | 110 | 11/01/22 | 247 | 508 | P | 250 | 518 | 100% | 518 | |
| Hawkins | John | Cascade | 04/28/50 | 369 | 317 | 501 | 03/28/33 | 288 | 570 | A | 408 | 485 | 50% | 243 | |
| Hillegas | Michael | McNett | 04/28/50 | 369 | 317 | 150 | 03/28/33 | 288 | 570 | P | | | | | |
| Hillegas | Michael | Cascade | 04/28/50 | 369 | 317 | 200 | 03/28/33 | 288 | 570 | P | 408 | 409 | 50% | 205 | |
| Hutchinson | James | Lewis | 12/07/04 | 188 | 489 | 494 | 03/28/33 | 288 | 570 | A | 495 | 494 | 50% | 247 | |
| Hutchinson | William | McNett | 04/28/50 | 369 | 317 | 408 | 03/28/33 | 288 | 570 | A | 408 | 458 | 50% | 229 | |
| James | William | Gamble | 04/28/50 | 369 | 317 | 422 | 03/28/33 | 288 | 570 | A | 423 | 450 | 50% | 225 | X |
| Jones | William | McNett | 04/28/50 | 369 | 317 | 408 | 03/28/33 | 288 | 570 | A | 408 | 431 | 50% | 216 | |
| Lennox | Hugh | McNett | 04/28/50 | 369 | 317 | 408 | 03/28/33 | 288 | 570 | P | 408 | 175 | 50% | 88 | |
| Levy | Aaron | McIntyre | 04/28/50 | 369 | 317 | 368 | 03/28/33 | 288 | 570 | P | 368 | 304 | 50% | 152 | |
| Levy | Sampson | Cascade | 04/28/50 | 369 | 317 | 408 | 03/28/33 | 288 | 570 | A | 408 | 441 | 50% | 221 | |
| Lewis | William | Cascade | 04/28/50 | 369 | 317 | 408 | 03/28/33 | 288 | 570 | P | 408 | 475 | 50% | 238 | |
| Long | Daniel | McIntyre | 04/28/50 | 369 | 317 | 250 | 03/28/33 | 288 | 570 | | | | | | |
| Long | Daniel | McNett | 04/28/50 | 369 | 317 | 158 | 03/28/33 | 288 | 570 | A | 408 | 411 | 50% | 206 | |
| Mifflin | Jonathan | Cascade | 04/28/50 | 369 | 316 | 408 | 03/28/33 | 288 | 570 | A | 408 | 441 | 50% | 221 | |
| Miles | James | McIntyre | 10/26/50 | 373 | 220 | 408 | 03/28/33 | 288 | 570 | A | 408 | 439 | 50% | 220 | |
| Miles | Samuel Jr. | McIntyre | 04/28/50 | 369 | 317 | 408 | 03/28/33 | 288 | 570 | A | 408 | 384 | 50% | 192 | |

Lycoming County 2007/2001/3532 OR Files 61-575 N330 2023 02:51:45 PM
Instrument                    book Page

| Warrantee Name Or Number | | Township | Source Deed | | | | Reservation Deed | | | | | Survyd Acres | % Own | IDC Net | Shal Lease |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | Date of Deed | Recorded DB | at Page | Acres | Date of Deed | Recorded DB | at Page | All P/O | Acres | | | | |
| Miller | Peter | Cascade | 04/28/50 | 369 | 316 | 413 | 03/28/33 | 288 | 570 | A | 414 | 450 | 50% | 225 | |
| Morgan | Jacob | McIntyre | 04/28/50 | 369 | 317 | 408 | 03/28/33 | 288 | 570 | A | 408 | 378 | 50% | 189 | |
| Perry | Rowland | Cascade | 04/28/50 | 369 | 317 | 408 | | | | | | | | | |
| Perry | Rowland | McIntyre | 04/28/50 | 369 | 316 | 408 | 03/28/33 | 288 | 570 | A | 408 | 446 | 50% | 223 | |
| Potter | John | Plunketts Ck | Sullivan County tax sale | | | 436 | 11/01/22 | 247 | 508 | A | 551 | 551 | 100% | 551 | |
| Price | John | McIntyre | 04/28/50 | 369 | 317 | 408 | 03/28/33 | 288 | 570 | A | 408 | 431 | 50% | 216 | |
| Rakestraw | Robt/Jos | McNett | 04/28/50 | 369 | 317 | 408 | 03/28/33 | 288 | 570 | A | 408 | 431 | 50% | 216 | |
| Rankin | Robert | Cascade | 04/28/50 | 369 | 317 | 100 | 03/28/33 | 288 | 570 | | | | | | |
| Rankin | Robert | McNett | 04/28/50 | 369 | 317 | 301 | 03/28/33 | 288 | 570 | A | 408 | 431 | 50% | 216 | |
| Rawle | William | Cascade | 04/28/50 | 369 | 317 | 408 | 03/28/33 | 288 | 570 | A | 408 | 458 | 50% | 229 | |
| Reynolds | James | Cascade | 04/28/50 | 369 | 317 | 408 | 03/28/33 | 288 | 570 | A | 408 | 453 | 50% | 227 | |
| Reynolds | James | McIntyre | 04/28/50 | 369 | 316 | 408 | | | | | | | | | |
| Reynolds | Thomas | Cascade | 04/28/50 | 369 | 316 | 408 | 03/28/33 | 288 | 570 | A | 408 | 408 | 50% | 204 | |
| Roberts | Algernon | McIntyre | 04/28/50 | 369 | 317 | 408 | 03/28/33 | 288 | 570 | A | 408 | 377 | 50% | 189 | |
| Shaw | Robert | McIntyre | 04/28/50 | 369 | 317 | 408 | 03/28/33 | 288 | 570 | A | 408 | 387 | 50% | 194 | |
| Shaw | William | McNett | 06/08/28 | 271 | 174 | 408 | 03/28/33 | 288 | 570 | A | 408 | 450 | 50% | 225 | |
| Singer | Abraham | McIntyre | 10/26/50 | 373 | 220 | 408 | 03/28/33 | 288 | 570 | A | 408 | 431 | 50% | 216 | |
| Singer | John | McIntyre | 04/28/50 | 369 | 316 | 248 | 03/28/33 | 288 | 570 | A | 248 | 256 | 50% | 128 | |
| Smith | Benjamin | Cascade | 04/28/50 | 369 | 317 | 408 | 03/28/33 | 288 | 570 | A | 408 | 439 | 50% | 220 | |
| Smith | John | McIntyre | 06/29/98 | 209 | 34 | 382 | 05/08/23 | 250 | 335 | A | 401 | 402 | 100% | 402 | |
| Smith | Robert | McIntyre | 04/28/50 | 369 | 317 | 300 | 03/28/33 | 288 | 570 | | | | | | |
| Smith | Robert | McNett | 04/28/50 | 369 | 317 | 108 | 03/28/33 | 288 | 570 | A | 408 | 467 | 50% | 234 | |
| Stewart | Walter | McIntyre | 04/28/50 | 369 | 317 | 408 | 03/28/33 | 288 | 570 | A | 408 | 431 | 50% | 216 | |
| Stewart | William | McIntyre | 04/28/50 | 369 | 317 | 408 | 03/28/33 | 288 | 570 | A | 408 | 400 | 50% | 200 | |
| Straub | Robert | Lewis | 06/13/34 | 291 | 475 | 31 | 02/03/50 | 367 | 162 | P | 31 | 31 | 87.5% | 27 | |
| Supplee | Jonathan | Cascade | 04/28/50 | 369 | 317 | 413 | 03/28/33 | 288 | 570 | A | 413 | 379 | 50% | 190 | |
| Thomas | Joseph | Cascade | 04/28/50 | 369 | 317 | 408 | 03/28/33 | 288 | 570 | A | 408 | 436 | 50% | 218 | |
| Tilghman | Edward | Cascade | 04/28/50 | 369 | 317 | 408 | 03/28/33 | 288 | 570 | A | 408 | 443 | 50% | 222 | |
| Tudor | George | Cascade | 04/28/50 | 369 | 317 | 408 | 03/28/33 | 288 | 570 | A | 408 | 448 | 50% | 224 | |

**Total Lycoming County**                    42,079          27,286

Lycoming County Prothonotary Civil E-Filed - 13 Nov 2023 02:51:45 PM

## OIL AND GAS LEASE

This lease made this ___1st___ day of ___December___, 2006, by and between
___International Development Corporation, a Colorado Corporation___

having an address at ___P.O. Box 9994, Washington, DC 20016___
hereinafter collectively called "Lessor" and Virginia Energy Consultants, LLC 7831 Carters Run Drive, Marshall, VA 20115 hereinafter called "Lessee".

WITNESSETH, That for and in consideration of the premises, and all of the mutual covenants and agreements hereinafter set forth, the Lessor and Lessee agree as follows:

LEASING CLAUSE: Lessor hereby leases exclusively to Lessee all the oil, gas and coalbed methane and their constituents, whether hydrocarbon or non-hydrocarbon, underlying the land herein leased, together with such exclusive rights as may be necessary or convenient for Lessee, at its election, to explore for, develop, produce, measure, and market production from the Leasehold, and from adjoining lands, using methods and techniques which are not restricted to current technology, including the right to conduct geophysical and other exploration test; to drill, maintain, operate, cease to operate, plug, abandon, and remove wells; to use or install roads, electric power and telephone facilities, and to construct pipelines with appurtenant facilities, including data acquisition, compression and collection facilities for use in the production and transportation of products from the Leasehold and from neighboring lands across the Leasehold, and such right shall survive the term of this agreement for so long thereafter as operations are continued, to use oil, gas, and non-domestic water sources, free of cost, to store gas of any kind underground, regardless of the source thereof, including the injection of gas therein and removing same therefrom, to protect stored gas, to operate, maintain, repair, and remove material and equipment.

DESCRIPTION: The Leasehold is located, all or part, in the County of ___Lycoming___, in the State of Pennsylvania, in the District/Township of _____ and described as follows:
and is bounded formerly or currently as follows: SEE ATTACHED EXHIBIT "A" FOR A COMPLETE DESCRIPTION OF LEASED PREMISES
On the North by Lands of _____
On the East by Lands of _____
On the South by Lands of _____
On the West by Lands of _____

Including lands acquired by: ___Instrument___ from _____ dated _____, and recorded in Book _____,
Page _____, and described for the purposes of this agreement as containing ___42.312___ acres, whether actually more or less, and including all contiguous or appurtenant lands owned by Lessor.

LEASE TERM: This Lease shall remain in force for a primary term of ___five (5)___ years from ___December 1___, 2006, and for as long thereafter as prescribed payments are made, or for as long thereafter as operations are conducted on the Leasehold in search of production of oil, gas, or their constituents, or for as long as a well capable of production is located on the Leasehold, or for as long as extended by others provisions herein, or for as long as the Leasehold is used for the underground storage of gas of or for the protection of stored gas. If after the primary term the last producing well on the Leasehold is plugged and abandoned, the Leasehold will remain under lease for an additional period of one year from the date of plugging and abandonment, subject to the payment of Delay Rental.

~~EXTENSION OF TERM: Lessee may extend the primary term for one additional period equal to the primary term by paying to Lessor, at any time within the primary term, proportionate to Lessor's percentage of ownership an Extension Payment equal in amount to the annual Delay Rental as herein described, or by drilling a well on the Leasehold which is not capable of commercial production.~~

PAYMENT TO LESSOR: Lessee covenants to pay Lessor, proportionate to Lessor's percentage of ownership as follows:

(A.) DELAY RENTAL: To pay Lessor as Delay Rental at the rate of ___Ten___ ($_10.00_) dollars per net mineral acre per year payable annually in advance, beginning on ___December 1___, 2007, and continuing thereafter until the commencement of Royalty payments. Delay Rental paid for time beyond the commencement date of Royalty payment shall be credited upon the Royalty payment. Upon conversion to Storage, Delay Rental payment shall be reestablished.

(B.) ROYALTY: It is agreed that the total Royalty that will be paid by Lessee shall be one eight (1/8th) and that any Royalty conveyance or reservation in Lessor's chain of title shall be subtracted from the one eight (1/8th) royalty proved herein. To pay Lessor as Royalty, less all taxes, assessments, and adjustments on production from the Leasehold as follows:

1. OIL: To deliver to the credit of Lessor, free of cost, a Royalty of the equal one-eighth part of all oil and constituents thereof produced and marketed from the Leasehold.

2. GAS: To pay Lessor an amount equal to one-eighth of the revenue realized by the Lessee for all gas and the constituents thereof produced and marketed from the Leasehold during the preceding month. Lessee may withhold Royalty payment until such time as the total withheld exceeds fifty dollars ($50.00).

(C.) DELAY IN MARKETING: In the event that Lessee does not market producible gas, oil, or their constituents from the Leasehold, Lessee shall continue to pay Delay Rental until such time as marketing is established, and such payment shall maintain this Lease in full force and effect to the same extent as payment of Royalty.

(D) SHUT-IN: In the event that production of oil, gas, or their constituents is interrupted and not marketed for a period of six months, and there is no producing well on the Leasehold, Lessee shall thereafter, as Royalty for constructive production, pay a Shut-In Royalty equal in frequency and amount to the Delay Rental until such time as production is re-established and said payment shall maintain the Lease in full force and effect to the same extent as payment of Royalty. During Shut-In, Lessee shall have the right to re-work, stimulate, or deepen any well on the Leasehold or drill a new well on the Leasehold in an effort to re-establish production, whether from and original producing formation  or from a different formation.  In the event that the production from the only producing well on the Leasehold is interrupted for a period of less than six months, this Lease shall remain in full force and effect without payment of Royalty or Shut-In Royalty.

(E.) DAMAGES: Lessee shall remove unnecessary equipment and materials and grade, reseed and mulch the drill site area at the completion of activities, and Lessee agrees to repair any damaged improvements to the land and pay for the loss of crops or marketable timber.

(F.) MANNER OF PAYMENT: Lessee shall make or tender all payments due hereunder by check, payable to Lessor, at Lessor's last known address, and Lessee may withhold any payment pending notification by Lessor of a change in address.

(G.) CHANGES IN LAND OWNERSHIP: Lessee shall not be bound by any change in the ownership of the Leasehold until furnished with such documentation as Lessee may reasonably require. Pending the receipt of documentation, Lessee may elect either to continue to make or withhold payments as if such a change had not occurred.

(H.) TITLE: If Lessee received evidence that Lessor does not have title to all or any part of the rights herein leased, Lessee may immediately withhold payments that would be otherwise due and payable hereunder to Lessor until the adverse claim is fully resolved.

(I.) LIENS: Lessee may at its option pay and discharge any past due taxes, mortgages, judgments, or other liens and encumbrances on or against any land or interest included in the Leasehold; and Lessee shall be entitled to recover from the debtor, with legal interest and cost, by deduction from any future payments to Lessor or by any other lawful means.

(J.) LIMITATION OF FORFEITURE: This lease shall never be subject to civil action or other proceeding to enforce a claim of forfeiture due to Lessee's alleged failure to perform as specified herein, unless, Lessee has received written notice of Lessor's demand and thereafter fails or refuses to satisfy Lessor's demand within 60 days from receipt of the notice.

UNITIZATION: Lessor grants Lessee the right to pool, unitize, or combine all or part of the Leasehold with other lands, whether contiguous or not contiguous, leased, or un-leased, whether owned by Lessee or by others, at a time before or after drilling to create drilling or production units either by contract right or pursuant to governmental authorization. Lessee is granted the right to change the size, shape and conditions of operations or payment of any unit created. Lessor agrees to accept and receive out of the production or the revenue realized from production of such unit, such proportional share of the Royalty from each unit well as the number of Leasehold acres included in the unit bears to the total number of acres in the unit. Otherwise, except for Free Gas, the drilling, operations in preparation for drilling, production from, or payment for Royalty, Shut-in Royalty, or Delay in Marketing for a well on such a unit shall have the same effect upon the terms of this Lease as if the well were located on the Leasehold.

FREE GAS: Upon approval of Lessor's written request for free gas and his execution of an Agreement for Delivery of Free Gas and Overburn Gas, one Lessor may lay a line to any producing gas well on the leased premises and take two hundred thousand (200,000) cubic feet of gas per year free of cost for domestic use in one dwelling on said lands at Lessor's own risk and subject to the use and right of abandonment of the well by the Lessee. All overburn gas shall be paid for by said Lessor at the current established retail rate in the area.

FACILITIES: Lessee shall not drill a well within 200 feet of any structure located on the Leasehold without Lessor's written consent. Lessor shall not erect any building or structure, or plant any trees within 200 feet of a well or within 25 feet of a pipeline without Lessee's written consent. Lessor shall not improve, modify, degrade or restrict roads and facilities built by Lessee's without written consent.

CONVERSION TO STORAGE: Lessee is hereby granted the right to convert the Leasehold to gas storage. At the time of conversion, Lessee shall pay Lessor's proportionate part for the estimated recoverable gas remaining in the well using methods of calculating gas reserves as are generally accepted by the natural gas industry, and Lessor shall be paid Delay Rental for as long thereafter as the Leasehold is used for gas storage or for protection of gas storage.

TITLE AND INTEREST: Lessor hereby warrants generally and agrees to defend title to the Leasehold and covenants that Lessee shall have quiet enjoyment hereunder and shall have benefit of the doctrine of after acquired title. Should any person having title to the Leasehold fail to execute this Lease, the Lease shall nevertheless be binding upon all person who do execute it as herein provided.

LEASE DEVELOPMENT: There is no covenant to develop the Leasehold within a certain time frame, and there shall be no leasehold forfeiture for implied covenants to produce. Provisions herein constitute full compensation for privileges herein granted.

ARBITRATION: In the event of a disagreement between Lessor and Lessee concerning this lease, performance thereunder, or damages caused by Lessee's operations, settlement shall be determined by a panel of three disinterested arbitrators. Lessor and Lessee shall appoint and pay the fee of one each, and the two so appointed shall appoint the third, whose fee shall be borne equally by Lessor and Lessee. The award shall be by unanimous decision of the arbitrators and shall be final.

SURRENDER: Lessee may surrender and cancel this lease as to all or any part of the Leasehold by recording a Surrender of Lease and if partially surrendered, the Delay Rental provided in the PAYMENTS clause shall be reduced in proportion to the acreage surrendered.

SUCCESSORS: All rights, duties, and liabilities herein benefit and bind Lessor and Lessee and their heirs, successors, and assigns.

ENTIRE CONTRACT: The entire agreement between Lessor and Lessee is embodied herein. No oral warranties, representation, or promises have been made or relied upon by either party as an inducement to or modification of this Lease.

SEE ATTACHED ADDENDUM MADE A PART HEREOF

IN WITNESS WHEREOF, this lease is entered into this the day and year first above written.

LESSOR _____     LESSOR _____

LESSOR _____     LESSOR _____

STATE OF _Maryland_                          ACKNOWLEDGMENT
COUNTY OF _St Marys_

On this _____ day of _____, 2006, before me, _____, a Notary
Public, came _____ to
me know (or satisfactorily proven) to be the individual(s) described in, and who executed the foregoing instrument, and acknowledged that he/she/they executed the same for the purposes therein contained. In witness thereof, I hereunto set my hand and official seal.

My Commission Expires on: _____     _____
                                                   Notary Public

STATE OF _Maryland_                          ACKNOWLEDGMENT
COUNTY OF _St Marys_

On this _1_ day of _December_, 2006, before me, _Shannon Palmer_, a Notary
Public, came _Charles D Rainey_ to
me know (or satisfactorily proven) to be the individual(s) described in, and who executed the foregoing instrument, and acknowledged that he/she/they executed the same for the purposes therein contained. In witness thereof, I hereunto set my hand and official seal.

My Commission Expires on: _6-9-10_     _Shannon Palmer_
                                              Notary Public

Prepared by: Standard Land Company, Inc, P.O. Box 235, Slatyfork, WV 26291

SHANNON PALMER
NOTARY PUBLIC STATE OF MARYLAND
My Commission Expires June 9, 2010

Lycoming County Prothonotary Civil E-Filed - 13 Nov 2023 02:51:45 PM

**ADDENDUM**

**THIS ADDENDUM** to Oil and Gas Lease between International Development Corporation, a Colorado Corporation, as Lessor and Virginia Energy Consultants, LLC, as Lessee, dated September 5th, 2006, shall in all respects be considered a part of the Lease, and to the extent that any provision(s) of this Addendum is inconsistent with any other provision(s) contained in the Lease, the provision(s) of this Addendum shall in all respects govern.

1.    <u>Royalty</u>.  Lessor's royalty shall be free and clear of all costs and expenses whatsoever including expenses of separation, compression, marketing, transportation, treating or manufacturing oil or gas produced hereunder, save and except ad valorem and production taxes.

2.    <u>Pugh Clause</u>.  Notwithstanding any other provision in this Lease, if a part of the leased premises is included within the lateral boundaries of a unit, or units, operations for drilling on, or production from, or the payment of shut-in rentals on such unit, or units, shall maintain this Lease only as to that portion of the leased premises within the lateral boundaries of such unit, or units provided that the shut-in rentals which may be paid with respect to any such unit, or units, shall be reduced in the proportion that the total number of acres from the leased premises which are not included in such unit or units, bears to the total number of acres covered by this Lease.  During the primary term, this Lease may be maintained in force as to land not included within the lateral boundaries of such unit, or units, in any manner provided for in this Lease, except that if it be by delay rental or shut-in rental payments, such payment shall be reduced in the proportion that the total number of acres from the leased premises which are included in such unit or units, bears to the total number of acres covered by this Lease.  As to that portion of the leased premises not included in such unit, or units, after the expiration of the primary term, this Lease may be maintained only by production of oil, gas or other minerals therefrom in paying quantities or by payment of shut-in rentals thereon (which payment shall be reduced in the proportion that the total number of acres from the leased premises which are included in a unit, or units, bears to the total number of acres covered by this Lease) or by operations or the provisions in this Lease which pertain to reworking operations, drilling operations or additional operations at or after the expiration of the primary term.

     One (1) year after the end of the primary term, this Lease shall terminate as to all depths, zones or horizons in the leased premises from 100 feet below the bottom of the zones or horizons from which production is then being maintained to all deeper depths, zones or horizons below such point; Lessee shall retain all rights hereunder from the surface down to 100 feet below the bottom of each zone or horizon from which production is then being maintained, as determined by electric well log for each producing well.  Notwithstanding a partial termination of this Lease under the provisions hereof, Lessee shall have and retain such easements of ingress and egress over those

Lycoming County Prothonotary Civil E-Filed - 13 Nov 2023 02:51:45 PM

lands and through the depths originally covered hereby as necessary to enable Lessee to develop and operate the portion of the leased premises then in effect for the production of oil or gas therefrom.

3.   <u>Continuous Drilling Obligation</u>.   If at any time within one hundred fifty (180) days prior to the end of the primary term hereof and/or beyond the primary term hereof, Lessee commences the actual drilling of a well on lands covered hereby, Lessee shall have a continuous drilling obligation of one hundred fifty (180) days from the date of rig release for such well, for the commencement of actual drilling on a subsequent well on the leased premises.   If, for any reason, Lessee fails to comply with this continuous drilling obligation, this Lease shall terminate as to all undeveloped acreage not otherwise included in a unit for a well formed pursuant to the provisions of this Lease.   Lessee shall be permitted to accumulate time under the continuous drilling program by conducting good faith commencement of actual drilling between wells earlier than the 180th day.   Any actual time so accrued may be applied to the next ensuing well to extend the time between wells beyond the 180 day deadline, provided however, that in no event shall this accumulation of time permit the commencement of actual drilling of a subsequent well greater than two hundred seventy (270) days from the date of rig release of the previous well.   For the purposes of this Lease, "actual drilling" shall mean that a drilling rig is on location of a sufficient size and capacity to commence and complete the drilling of such well to the intended depth and "with the turning of the bit to the right in the wellbore".

4.   <u>Pooling Minimum/Maximum Acreage</u>.   Lessee's pooling rights under Paragraph 4 shall be limited by the following:

(i)   If Lessee has completed a well on the leased premises which is classified as an oil well by the appropriate state or other governmental regulatory agency or commission having jurisdiction and is producing, or capable of producing, oil in commercial quantities, then the unit shall not contain more than forty (40) surface acres around each such oil well.

(ii)   If Lessee has completed a well on the leases premises which is classified as a gas well by the appropriate state or other governmental regulatory agency or commission having jurisdiction and is producing, or capable of producing, gas in commercial quantities, then the unit shall contain not more than (a) one hundred sixty (160) surface acres around each gas well drilled to the top of the Tully Limestone or less and (b) three hundred twenty (320) surface acres around each gas well drilled below the Tully Limestone to the top of the Onandaga Limestone or less and (c) six hundred forty (640) surface acres around each gas well drilled below the Onandaga Limestone.

(iii)   Until the point in time, if any, that there is insufficient acreage remaining under this Lease that is not already included in a unit consisting solely of the leased

Lycoming County Prothonotary Civil E-Filed - 13 Nov 2023 02:51:45 PM

premises, for any unit pooled for oil, all of the total surface acres of such unit shall consist of the leased premises covered hereby; and at such point in time, Lessee may pool the remaining acreage in a unit with other acreage not covered by this lease in order to form an oil unit no larger than the maximum size unit required by this lease.

(iv)   Until the point in time, if any, that there is insufficient acreage remaining under this Lease that is not already included in a unit consisting solely of the leased premises, for any unit pooled for gas, all of the total surface acres of such unit shall consist of the leased premises covered hereby; and after such point in time, Lessee may pool the remaining acreage in a unit with other acreage not covered by this lease in order to form a gas unit no larger than the maximum size unit required by this lease.

(v)   If at any time during the term of this Lease Lessee plans to drill and complete a well on lands adjacent to, and within 250 feet of, any of the leased premises, Lessee shall first notify Lessor of the same in writing, together with all information reasonably requested by Lessor, and Lessee shall, subject to Lessor's prior written approval, utilize Lessee's best efforts to form a pooled unit containing as much of Lessor's acreage as is reasonably possible in such unit and (b) limit the size of such oil or gas unit to the size units required by the terms of this Lease, give or take a ten percent (10%) tolerance of such limits.

5.   <u>Indemnification</u>.  Lessee agrees to protect, defend, indemnify and hold harmless Lessor, the owners of the surface of the leased premises and their respective agents, employees and tenants, from and against all liabilities, losses, expenses, claims, demands and causes of action of every kind and character, whether for death or personal injury to person (including agents and employees of Lessee and Lessee's subcontractors) or loss of or damage to property in any way or at any time arising out of, incident to or in connection with this Lease, or operations conducted on the leased premises.

6.   <u>Information</u>.  At Lessor's written request, Lessee shall provide Lessor, at Lessor's expense, with copies of any non confidential information relating to any and all wells drilled on the leased premises or on lands with which leased premises are pooled including but not limited to, monthly purchaser statements covering all oil, gas and liquids produced from the leased premises, division orders, daily drilling reports, daily production reports (for the first 120 days of production), and monthly production reports thereafter.

7.   <u>Shut-in Payments</u>.  This Lease shall not be perpetuated by shut-in payments in the aggregate more than two (2) years beyond the primary term.   The annual shut-in payments beyond the primary term shall be based on $25.00 per net mineral acre.

Lycoming County Prothonotary Civil E-Filed - 13 Nov 2023 02:51:45 PM

# EXHIBIT A

## IDC OGM PROPERTIES FOR LEASE IN LYCOMING COUNTY, PA

| Warrantee Name Or Number | Township | Source Deed Date of Deed | Recorded DB at Page | | Acres | Reservation Deed Date of Deed | Recorded DB at Page | | All P/O | Acres | Survyd Acres | % Own | IDC Net | Shal Lease |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1602 | Hewes/Fisher Pine | 08/15/08 | 203 | 269 | 890 | 08/01/25 | 260 | 277 | A | 900 | 1,071 | 87.5% | 937 | |
| 1605 | Hewes/Fisher Pine | 12/07/83 | 162 | 300 | 400 | | | | | | | | | |
| 1605 | Hewes/Fisher Jackson | 12/07/83 | 162 | 300 | 590 | | | | | | | | | |
| 1605 | Hewes/Fisher Pine | 06/29/98 | 209 | 34 | 400 | | | | | | | | | |
| 1605 | Hewes/Fisher Jackson | 06/29/98 | 209 | 34 | 590 | 08/01/25 | 260 | 277 | A | 817 | 817 | 87.5% | 715 | |
| 1613 | Hewes/Fisher Jackson | 12/07/83 | 162 | 300 | 165 | | | | | | | | | |
| 1613 | Hewes/Fisher Jackson | 06/29/98 | 209 | 34 | 107 | 07/10/23 | 249 | 446 | P | | 108 | 87.5% | 95 | |
| 1615 | Hewes/Fisher Jackson | 12/07/83 | 162 | 300 | 773 | | | | | | | | | |
| 1615 | Hewes/Fisher Jackson | 08/15/08 | 203 | 269 | 105 | | | | | | | | | |
| 1615 | Hewes/Fisher Jackson | 06/29/98 | 209 | 34 | 95 | | | | | | | | | |
| 1615 | Hewes/Fisher Jackson | 10/26/50 | 373 | 220 | 95 | 07/03/19 | 230 | 337 | P | 210 | 234 | 87.5% | 205 | |
| 1620 | Hewes/Fisher Cogan House | 08/15/08 | 203 | 269 | 553 | | | | | | | | | |
| 1620 | Hewes/Fisher Pine | 08/15/08 | 203 | 269 | 250 | 07/10/23 | 249 | 446 | A | 833 | 854 | 87.5% | 747 | |
| 1621 | Hewes/Fisher Cogan House | 12/07/83 | 162 | 300 | 214 | 07/10/23 | 249 | 446 | A | 1,055 | 227 | 100% | 227 | |
| 1622 | Hewes/Fisher Cogan House | 02/16/03 | 192 | 381 | 990 | 07/10/23 | 249 | 446 | A | 990 | 1082 | 87.5% | 947 | |
| 1626 | Hewes/Fisher Cogan House | 08/15/08 | 203 | 269 | 541 | 07/10/23 | 249 | 446 | A | 541 | 541 | 87.5% | 473 | |
| 4788 | Miller/Murray Jackson | 12/07/83 | 162 | 300 | 672 | | | | | | | | | |
| 4788 | Miller/Murray Jackson | 06/29/98 | 209 | 34 | 1,109 | 12/28/27 | 280 | 164 | A | 854 | 1,176 | 100% | 1,176 | |
| 4789 | Miller/Murray Jackson | 06/29/98 | 209 | 34 | 455 | 11/28/27 | 280 | 162 | P | 131 | 138 | 100% | 138 | |
| 4789 | Miller/Murray McIntyre | 06/29/98 | 209 | 34 | 601 | 12/28/27 | 280 | 164 | P | 558 | 585 | 100% | 585 | |
| 5651 | Strawbridge, J. McIntyre | 10/26/50 | 373 | 220 | 430 | 03/28/33 | 288 | 570 | P | 1098 | 80 | 50% | 40 | |
| 5652 | Strawbridge, J. McIntyre | 12/07/83 | 162 | 300 | 871 | 01/31/18 | 227 | 528 | P | 222 | 222 | 100% | 222 | |
| 5652 | Strawbridge, J. McIntyre | 10/26/50 | 373 | 220 | 1,098 | 11/28/27 | 280 | 162 | P | 60 | 60 | 100% | 60 | |
| 5652 | Strawbridge, J. McIntyre | 10/26/50 | 373 | 220 | 1,098 | 03/28/33 | 288 | 570 | P | 321 | 767 | 50% | 384 | |
| 5653 | Strawbridge, J. McIntyre | 12/07/83 | 162 | 300 | 850 | | | | | | | | | |
| 5653 | Strawbridge, J. Jackson | 06/29/98 | 209 | 34 | 1,068 | | | | | | | | | |
| 5653 | Strawbridge, J. McIntyre | 10/26/50 | 373 | 220 | 850 | 01/31/18 | 227 | 528 | A | 1,206 | 1,206 | 100% | 1,206 | |
| 5654 | Strawbridge, J. McIntyre | 12/07/83 | 162 | 300 | 100 | | | | | | | | | |
| 5654 | Strawbridge, J. Jackson | 12/07/83 | 162 | 300 | 1,098 | | | | | | | | | |
| 5654 | Strawbridge, J. Jackson | 06/29/98 | 209 | 34 | 1,088 | 08/31/18 | 227 | 528 | A | 1,206 | 1,206 | 100% | 1,206 | |
| 5656 | Strawbridge, J. CogHs/Jack/McI | 02/16/03 | 192 | 381 | 389 | 08/31/18 | 227 | 528 | P | 389 | 389 | 100% | 389 | |
| 5657 | Strawbridge, J. McIntyre | 02/16/03 | 192 | 381 | 389 | 08/31/18 | 227 | 528 | P | 389 | 389 | 100% | 389 | |
| 5658 | Strawbridge, J. McIntyre | 12/07/83 | 162 | 300 | 248 | 08/31/18 | 227 | 528 | | | | | | |
| 5658 | Strawbridge, J. McIntyre | 05/25/03 | 183 | 326 | 164 | 08/31/18 | 227 | 528 | A | 412 | 1,034 | 100% | 1,034 | |
| 5660 | Strawbridge, J. McIntyre | 10/26/50 | 373 | 220 | 851 | 03/28/33 | 288 | 570 | A | 1,098 | 1,215 | 50% | 608 | |
| 5665 | Strawbridge, J. Cogan Hs/Lewis | 06/29/98 | 209 | 34 | 948 | 12/15/21 | 245 | 65 | A | 949 | 949 | 87.5% | 830 | X |
| 5667 | Strawbridge, J. Lewis | 06/29/98 | 209 | 34 | 1,098 | 05/26/13 | 213 | 385 | A | 1,100 | 1,097 | 87.5% | 960 | X |
| 5753 | Strawbridge, J. Lewis | 06/29/98 | 209 | 34 | 719 | 07/24/19 | 231 | 171 | A | 717 | 717 | 87.5% | 627 | X |

| Warrantee Name Or Number | | Township | Source Deed | | | Reservation Deed | | | | | Survyd Acres | % Own | IDC Net | Shal Lease |
| | | | Date of Deed | Recorded DB at Page | | Acres | Date of Deed | Recorded DB at Page | | All P/O | Acres | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Afflick | Thomas | Cascade | 04/28/50 | 369 | 317 | 408 | 03/28/33 | 288 | 570 | A | 408 | 408 | 50% | 204 | |
| Antis | Frederick | McIntyre | 06/29/98 | 209 | 34 | 408 | 12/27/23 | 250 | 335 | | 408 | 432 | 100% | 432 | |
| Barclay | George | Cascade/McIntyre | 04/28/50 | 369 | 317 | 408 | 03/28/33 | 288 | 570 | A | 408 | 462 | 50% | 231 | |
| Barker | William | Lewis | 06/10/26 | 262 | 254 | 91 | 10/25/24 | 254 | 587 | P | 126 | 126 | 87.5% | 110 | X |
| Barton | William | McNett | 06/08/28 | 271 | 174 | 408 | 03/28/33 | 288 | 570 | A | 408 | 428 | 50% | 214 | |
| Bayard | James | McIntyre | 04/28/50 | 369 | 317 | 300 | 03/28/33 | 288 | 570 | A | 408 | 430 | 50% | 215 | |
| Bayard | John | McNett | 04/28/50 | 369 | 317 | 408 | 03/28/33 | 288 | 570 | P | 408 | 202 | 50% | 101 | |
| Bayard | Steven | McNett | 04/28/50 | 369 | 317 | 408 | 03/28/33 | 288 | 570 | A | 408 | 431 | 50% | 216 | |
| Beck | Henry | Plunk Ck | 06/29/98 | 209 | 34 | 68 | 12/01/27 | 275 | 373 | P | 68 | 159 | 87.5% | 151 | X |
| Biddle | Clement | Cascade | 04/28/50 | 369 | 317 | 408 | 03/28/33 | 288 | 570 | A | 408 | 443 | 50% | 222 | |
| Brown | William | McNett | 06/29/98 | 209 | 34 | 408 | 12/27/23 | 250 | 335 | A | 460 | 460 | 100% | 460 | |
| Caldwe | David | Cascade | 04/28/50 | 369 | 317 | 413 | 03/28/33 | 288 | 570 | A | 413 | 408 | 50% | 204 | |
| Chancellc | William | McIntyre | 04/28/50 | 369 | 317 | 289 | 03/28/33 | 288 | 570 | A | 290 | 313 | 50% | 157 | |
| Cutbusl | Ed | Cascade | 04/28/50 | 369 | 316 | 408 | 03/28/33 | 288 | 570 | A | 408 | 408 | 50% | 204 | |
| Dale | Samuel | Cascade | 04/28/50 | 369 | 317 | 115 | 03/28/33 | 288 | 570 | | | | | | |
| Dale | Samuel | McNett | 04/28/50 | 369 | 317 | 408 | 03/28/33 | 288 | 570 | A | 408 | 441 | 50% | 221 | |
| Delaney | Daniel | Cascade | 04/28/50 | 369 | 316 | 208 | 03/28/33 | 288 | 570 | | | | | | |
| Delaney | Daniel | McNett | 04/28/50 | 369 | 316 | 200 | 03/28/33 | 288 | 570 | A | 408 | 479 | 50% | 240 | |
| Dunlap | John #48 | McIntyre | 10/26/50 | 373 | 220 | 50 | 03/28/33 | 288 | 570 | P | 513 | 51 | 50% | 26 | |
| Fox | Joseph | Cascade | 04/28/50 | 369 | 317 | | 03/28/33 | 288 | 570 | A | 408 | 407 | 50% | 204 | |
| Francis | Teuch | Cascade | 04/28/50 | 369 | 317 | 401 | 03/28/33 | 288 | 570 | A | 408 | 408 | 50% | 204 | |
| Garrity | Mary | Cascade | 04/28/50 | 369 | 316 | 408 | 03/28/33 | 288 | 570 | A | 408 | 432 | 50% | 216 | |
| George | David | Cascade | 04/28/50 | 369 | 317 | 300 | 03/28/33 | 288 | 570 | | | | | | |
| George | David | McNett | 04/28/50 | 369 | 317 | 108 | 03/28/33 | 288 | 570 | A | 408 | 413 | 50% | 207 | |
| George | Edward | Cascade | 04/28/50 | 369 | 317 | 408 | 03/28/33 | 288 | 570 | A | 408 | 416 | 50% | 208 | |
| George | Thomas | McNett | 04/28/50 | 369 | 316 | 50 | 03/28/33 | 288 | 570 | | | | | | |
| George | Thomas | Cascade | 04/28/50 | 369 | 317 | 362 | 03/28/33 | 288 | 570 | A | 413 | 439 | 50% | 220 | |
| Gratz | Michael | McIntyre | 04/28/50 | 369 | 317 | 408 | 03/28/33 | 288 | 570 | A | 408 | 522 | 50% | 261 | |
| Gratz | Michael | McNett | 04/28/50 | 369 | 317 | 408 | 03/28/33 | 288 | 570 | A | 408 | 448 | 50% | 224 | |
| Gray | William | McNett | 04/28/50 | 369 | 317 | 408 | 03/28/33 | 288 | 570 | P | 408 | 408 | 50% | 204 | |
| Harmer | Josiah | Cascade | 04/28/50 | 369 | 317 | 408 | 03/28/33 | 288 | 570 | A | 408 | 423 | 50% | 212 | |
| Harrison | William | Plunketts Ck | Sullivan County tax sale | | | 110 | 11/01/22 | 247 | 508 | P | 250 | 265 | 100% | 265 | |
| Hawkins | John | Cascade | 04/28/50 | 369 | 317 | 501 | 03/28/33 | 288 | 570 | A | 408 | 485 | 50% | 243 | |
| Hillegas | Michael | McNett | 04/28/50 | 369 | 317 | 150 | 03/28/33 | 288 | 570 | P | 29 | | 50% | 0 | |
| Hillegas | Michael | Cascade | 04/28/50 | 369 | 317 | 200 | 03/28/33 | 288 | 570 | P | 408 | 409 | 50% | 205 | |
| Hutchinson | William | McNett | 04/28/50 | 369 | 317 | 408 | 03/28/33 | 288 | 570 | A | 408 | 458 | 50% | 229 | |
| James | William | Gamble | 04/28/50 | 369 | 317 | 422 | 03/28/33 | 288 | 570 | A | 423 | 450 | 50% | 225 | X |
| Jones | William | McNett | 04/28/50 | 369 | 317 | 408 | 03/28/33 | 288 | 570 | A | 408 | 431 | 50% | 216 | |
| Lennox | Hugh | McNett | 04/28/50 | 369 | 317 | 408 | 03/28/33 | 288 | 570 | P | 408 | 175 | 50% | 88 | |
| Levy | Aaron | McIntyre | 04/28/50 | 369 | 317 | 368 | 03/28/33 | 288 | 570 | P | 368 | 304 | 50% | 152 | |
| Levy | Sampson | Cascade | 04/28/50 | 369 | 317 | 408 | 03/28/33 | 288 | 570 | A | 408 | 441 | 50% | 221 | |
| Lewis | William | Cascade | 04/28/50 | 369 | 317 | 408 | 03/28/33 | 288 | 570 | P | 408 | 475 | 50% | 238 | |
| Long | Daniel | McIntyre | 04/28/50 | 369 | 317 | 250 | 03/28/33 | 288 | 570 | | | | | | |
| Long | Daniel | McNett | 04/28/50 | 369 | 317 | 158 | 03/28/33 | 288 | 570 | A | 408 | 411 | 50% | 206 | |
| Mifflin | Jonathan | Cascade | 04/28/50 | 369 | 316 | 408 | 03/28/33 | 288 | 570 | A | 408 | 441 | 50% | 221 | |
| Miles | James | McIntyre | 10/26/50 | 373 | 220 | 408 | 03/28/33 | 288 | 570 | A | 408 | 439 | 50% | 220 | |
| Miles | Samuel Jr. | McIntyre | 04/28/50 | 369 | 317 | 408 | 03/28/33 | 288 | 570 | A | 408 | 384 | 50% | 192 | |

Lycoming County Prothonotary Civil E-Filed - 13 Nov 2023 02:51:45 PM

| Warrantee Name Or Number | | Township | Source Deed | | | | Reservation Deed | | | | | | Survyd Acres | % Own | IDC Net | Shal Lease |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | Date of Deed | Recorded DB at Page | | Acres | Date of Deed | Recorded DB at Page | | All P/O | Acres | | | | | |
| Miller | Peter | Cascade | 04/28/50 | 369 | 316 | 413 | 03/28/33 | 288 | 570 | A | 414 | 450 | 50% | 225 | |
| Morgan | Jacob | McIntyre | 04/28/50 | 369 | 317 | 408 | 03/28/33 | 288 | 570 | A | 408 | 378 | 50% | 189 | |
| Perry | Rowland | Cascade | 04/28/50 | 369 | 317 | 408 | | | | | | | | | |
| Perry | Rowland | McIntyre | 04/28/50 | 369 | 316 | 408 | 03/28/33 | 288 | 570 | A | 408 | 446 | 50% | 223 | |
| Potter | John | Plunketts Ck | Sullivan County tax sale | | | 436 | 11/01/22 | 247 | 508 | A | 551 | 551 | 100% | 551 | |
| Price | John | McIntyre | 04/28/50 | 369 | 317 | 408 | 03/28/33 | 288 | 570 | A | 408 | 431 | 50% | 216 | |
| Rakestrav | Robt/Jos | McNett | 04/28/50 | 369 | 317 | 408 | 03/28/33 | 288 | 570 | A | 408 | 431 | 50% | 216 | |
| Rankin | Robert | Cascade | 04/28/50 | 369 | 317 | 100 | 03/28/33 | 288 | 570 | | | | | | |
| Rankin | Robert | McNett | 04/28/50 | 369 | 317 | 301 | 03/28/33 | 288 | 570 | A | 408 | 431 | 50% | 216 | |
| Rawle | William | Cascade | 04/28/50 | 369 | 317 | 408 | 03/28/33 | 288 | 570 | A | 408 | 458 | 50% | 229 | |
| Reynolc | James | Cascade | 04/28/50 | 369 | 317 | 408 | 03/28/33 | 288 | 570 | A | 408 | 453 | 50% | 227 | |
| Reynolc | James | McIntyre | 04/28/50 | 369 | 316 | 408 | | | | | | | | | |
| Reynolc | Thomas | Cascade | 04/28/50 | 369 | 316 | 408 | 03/28/33 | 288 | 570 | A | 408 | 408 | 50% | 204 | |
| Roberts | Algernon | McIntyre | 04/28/50 | 369 | 317 | 408 | 03/28/33 | 288 | 570 | A | 408 | 377 | 50% | 189 | |
| Shaw | Robert | McIntyre | 04/28/50 | 369 | 317 | 408 | 03/28/33 | 288 | 570 | A | 408 | 387 | 50% | 194 | |
| Shaw | William | McNett | 06/08/28 | 271 | 174 | 408 | 03/28/33 | 288 | 570 | A | 408 | 450 | 50% | 225 | |
| Singer | Abraham | McIntyre | 10/26/50 | 373 | 220 | 408 | 03/28/33 | 288 | 570 | A | 408 | 431 | 50% | 216 | |
| Singer | John | McIntyre | 04/28/50 | 369 | 316 | 248 | 03/28/33 | 288 | 570 | A | 248 | 256 | 50% | 128 | |
| Smith | Benjamin | Cascade | 04/28/50 | 369 | 317 | 408 | 03/28/33 | 288 | 570 | A | 408 | 439 | 50% | 220 | |
| Smith | John | McIntyre | 06/29/98 | 209 | 34 | 382 | 05/08/23 | 250 | 335 | A | 401 | 402 | 100% | 402 | |
| Smith | Robert | McIntyre | 04/28/50 | 369 | 317 | 300 | 03/28/33 | 288 | 570 | | | | | | |
| Smith | Robert | McNett | 04/28/50 | 369 | 317 | 108 | 03/28/33 | 288 | 570 | A | 408 | 467 | 50% | 234 | |
| Stewart | Walter | McIntyre | 04/28/50 | 369 | 317 | 408 | 03/28/33 | 288 | 570 | A | 408 | 431 | 50% | 216 | |
| Stewart | William | McIntyre | 04/28/50 | 369 | 317 | 408 | 03/28/33 | 288 | 570 | A | 408 | 400 | 50% | 200 | |
| Supplee | Jonathan | Cascade | 04/28/50 | 369 | 317 | 413 | 03/28/33 | 288 | 570 | A | 413 | 379 | 50% | 190 | |
| Thomas | Joseph | Cascade | 04/28/50 | 369 | 317 | 408 | 03/28/33 | 288 | 570 | A | 408 | 436 | 50% | 218 | |
| Tilghma | Edward | Cascade | 04/28/50 | 369 | 317 | 408 | 03/28/33 | 288 | 570 | A | 408 | 443 | 50% | 222 | |
| Tudor | George | Cascade | 04/28/50 | 369 | 317 | 408 | 03/28/33 | 288 | 570 | A | 408 | 448 | 50% | 224 | |

**Total Lycoming County**                                                                 42,312              28,447

Lycoming County Prothonotary Civil E-Filed - 13 Nov 2023 02:51:45 PM

# EXHIBIT B

Lycoming County Prothonotary Civil E-Filed - 13 Nov 2023 02:51:45 PM
Instrument          book Page
200900001935 OR   6561  155

PETROEDGE DRAFT: DECEMBER 11, 2007

AMENDMENT ~~TO~~ and Restatement
of OIL AND GAS LEASE

THIS AMENDMENT TO OIL AND GAS LEASE (this "Amendment"), executed this 13th day of february, 2007 but effective as December 1, 2006, is by and between International Development Corporation, a Colorado corporation, whose address is P.O. Box 9994, Washington, D.C. 20016 (referred to herein as "Lessor"), and Virginia Energy Consultants, LLC, a Virginia _____ limited liability company, whose address is 7831 Carters Run Drive, Marshall, Virginia 20115 (referred to herein as "Lessee").

RECITALS

A.     The parties hereto entered into that certain Oil and Gas Lease dated December 1, 2006 (the "Lease").

B.     The parties hereto now wish to amend the Lease to incorporate the matters described hereinbelow.

NOW, THEREFORE, in consideration of the foregoing and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto hereby agree as follows:

1.     Amendments. Subject to the terms and conditions set forth herein, the Lease is hereby amended as follows:

    a.     The first sentence of the paragraph entitled "LEASE TERM" shall be deleted in its entirety and replaced with the following:

        This Lease shall remain in force for a primary term of six (6) years from December 1, 2006, and for as long thereafter as prescribed payments are made, or for as long thereafter as operations are conducted on the Leasehold in search of production of oil, gas or their constituents, or for as long thereafter as oil, gas or their constituents are produced in paying quantities from the Leasehold, or for as long as the Leasehold is used for the underground storage of gas or for the protection of stored gas.

    b.     The paragraph entitled "DELAY RENTAL" shall be deleted in its entirety and replaced with the following:

**[RESERVED]**

    c.     The paragraph entitled "DELAY IN MARKETING" shall be deleted in its entirety and replaced with the following:

**[RESERVED]**

1

1227403v1

200900001935
Filed for Record in
LYCOMING COUNTY PA
ANNABEL MILLER
02-13-2009 At 10:13 am.
LESS 30 YR        30.50
OR   book 6561 Page 155 - 164



FILED
LYCOMING COUNTY
2009 FEB 13  A 10: 12
ANNABEL MILLER
RECORDER OF DEEDS

Lycoming County Prothonotary Civil E-Filed - 13 Nov 2023 02:51:45 PM
Instrument          book Page
2009000001935 OR    6561  156

d.   In the paragraph entitled "SHUT-IN", the phrase "in frequency and amount to the Delay Rental" shall be deleted and replaced with the following:

ten dollars ($10) per net mineral acre per year

e.   In the paragraph entitled "FREE GAS", the word "one" shall be inserted immediately after the word "any" and immediately before the word "producing".

f.   Section 1 of the Lease Addendum shall be deleted in its entirety, and replaced with the following:

Lessee shall be entitled to deduct from Lessor's royalty one-eighth (1/8) of:  (i) all costs assessed by third parties associated with transporting oil and gas from or attributable Leasehold to the point of sale; (ii) all costs assessed by third parties associated with processing such oil and gas prior to the point of sale; (iii) all costs associated with shrinkage assessed by purchasers with respect to such oil and gas; (iv) all other post-production third party costs incurred by Lessee and/or its affiliates prior to the point of sale with respect to such oil and gas and (v) all taxes assessable on such oil and gas at and prior to the point of sale.

g.   The first paragraph of Section 2 of the Lease Addendum shall be deleted in its entirety and replaced with the following:

(a)

i.   On or before December 1, 2008, Lessee shall drill not less than two (2) wells on the Leasehold acreage identified as "Non-State Leasehold" on Exhibit "A" attached hereto. Each such well shall penetrate the Devonian Marcellus Shale and reach total depth in or below the Devonian Onondaga formation.

ii.   Within one (1) year of the day upon which Lessee obtains all surface rights Lessee deems necessary in its sole discretion to explore for, develop and produce oil and gas from the Leasehold acreage identified as "State Leasehold" on Exhibit "A" (such day, the "Surface Right Day"), Lessee shall drill two (2) wells on the State Leasehold, each of which shall penetrate the Devonian Marcellus Shale and reach a total depth in or below the Devonian Onondaga formation.

iii.   If Lessee fulfills its obligations under Sections 2(a)(i) and (ii) of this Lease Addendum, Lessee shall have the right but not the obligation to drill additional wells on the Leasehold acreage for so long as Lessee drills two (2) wells on the

Lycoming County Prothonotary Civil E-Filed - 13 Nov 2023 02:51:45 PM
Instrument        book Page
200900001935 OR   6561   157

Leasehold acreage per twelve (12) consecutive calendar month period, with the first such twelve (12) consecutive calendar month period commencing on the one (1) year anniversary of the Surface Right Day.  Lessee shall have the right to carry forward and credit to future drilling obligations for subsequent twelve (12) consecutive month periods any well(s) drilled on the Leasehold acreage during a current twelve (12) consecutive month period in excess of the two (2) well obligation for such twelve (12) consecutive calendar month period (and may also carry forward and credit any well drilled prior to the one (1) year anniversary of the Surface Right Day in excess of Lessee's obligations under Sections 2(a)(i) and (ii) against Lessee's drilling obligations for any such twelve (12) consecutive month calendar period).  For purposes of this Section 2(a)(iii), each directional well drilled on the Leasehold acreage for which the horizontal distance between the surface location of the wellbore of such well and the point where the wellbore intersects the top of the Marcellus geologic formation is greater than or equal to 500' shall be deemed to be two (2) wells drilled on the Leasehold acreage.

h. The second paragraph of Section 2 of the Lease Addendum shall be amended by numbering such paragraph as "Section 2(b)" and adding the following sentence to the end of such paragraph:

Notwithstanding anything to the contrary in this Section 2(b), if Lessee drills at least one (1) well to a total depth within or below the Ordovician Trenton Black River geologic formation on or before December 1, 2012, Lessee shall have no obligation to release any horizons pursuant to this Section 2(b) of this Lease Addendum.

i. Section 3 of the Lease Addendum shall be deleted in its entirety and replaced with the following:

(a) On December 1, 2008, Lessee shall be required to:  (i) release to Lessor any Non-State Leasehold not then included in a unit for a well drilled hereunder in accordance with the terms of Section 4 of this Lease Addendum; or (ii) pay an additional rental in respect of any Non-State Leasehold not then included in a unit for a well drilled hereunder in accordance with the terms of Section 4 of this Lease Addendum that Lessee desires to remain subject to this Lease in an amount equal to $75 per net mineral acre in respect of such acreage (the "Non-State Leasehold Additional Rental", and such Non-State Leasehold for which such payment is made, the "Non-State Remaining Leasehold").  In the event Lessee pays the Non-State Leasehold Additional Rental, Lessee shall be entitled to continue to drill wells on the Non-State Remaining Leasehold until

1227403v1

Lycoming County Prothonotary Civil E-Filed 13 Nov 2023 02:51:45 PM
Instrument       Book  Page
200900001935 OR   6561   158

December 1, 2012.  Any Non-State Remaining Leasehold not included in a unit for a well drilled hereunder in accordance with the terms of Section 4 of this Lease Addendum as of December 1, 2012 shall be released to Lessor by Lessee.

(b)     On the one year anniversary of the Surface Right Day, Lessee shall be required to:  (i) release to Lessor any State Leasehold not then included in a unit for a well drilled hereunder in accordance with the terms of Section 4 of this Lease Addendum; or (ii) pay an additional rental in respect of any State Leasehold not then included in a unit for a well drilled hereunder in accordance with the terms of Section 4 of this Lease Addendum that Lessee desires to remain subject to this Lease in an amount equal to $75 per net mineral acre in respect of such acreage (the "State Leasehold Additional Rental", and such State Leasehold for which such payment is made, the "State Remaining Leasehold").  In the event Lessee pays the State Leasehold Additional Rental, Lessee shall be entitled to continue to drill wells on the State Remaining Leasehold until December 1, 2012.  Any State Remaining Leasehold not included in a unit for a well drilled hereunder in accordance with the terms of Section 4 of the Lease Addendum as of December 1, 2012 shall be released to Lessor by Lessee.

(c)     Notwithstanding anything to the contrary in this Section 3, in the event Lessee spuds twenty five (25) wells on the Leasehold, Lessee shall be entitled to retain the entirety of the Leasehold for the remainder of the term of this Lease with no further obligation to drill on undeveloped acreage thereof pursuant to this Section 3.

(d)     In the event that any of the Leasehold is released by Lessee to Lessor pursuant to the terms of this Lease, Lessee shall have all rights of ingress and egress to and use of the surface associated with the acreage included in the Leasehold acreage as of December 1, 2006 as may be necessary or convenient for the purpose of exploring for, drilling for, producing and marketing oil and gas and operating the wells on the Leasehold acreage retained by Lessee after such release.

j.     Sections 4(ii) and (iii) of the Lease Addendum shall be deleted in their entireties and replaced with the following:

ii.     If Lessee has drilled a vertical gas well to the target depth identified by Lessee prior to commencement of drilling operations with respect to such well, the unit for such well shall be 640 acres, which acreage shall be in the form of a square, where practical, and where not practical, in such other form as may be proposed by Lessee, which proposed form shall be subject to the consent of Lessor, which consent shall not be unreasonably withheld, with the

1227469.v1

4

Lycoming County Prothonotary Civil E-Filed - 13 Nov 2023 02:51:45 PM

Instrument      book Page
200900001935 OR   6561  159

well bore of the subject well located at the center of such acreage, or as near the center of such acreage as may be practical.

iii.   If Lessee has drilled a directional gas well to the target depth identified by Lessee prior to commencement of drilling operations with respect to such well, the unit acreage for such well shall be the sum of: (A) 640 acres, and (B) the product of: (I) 0.30 and (II) the total horizontal run of the wellbore of such directional well between the surface and the point where the wellbore intersects the top of the Marcellus geologic formation. By way of example, the unit for a well for which the horizontal distance between the surface location of the wellbore and the point where the wellbore intersects the top of the Marcellus geologic formation is 2,000' would be 1,240 acres (640 acres + 0.30 acre/feet x 2000' = 1,240 acres). The acreage shall be in the form of a rectangle, with dimensions as may be proposed by Lessee, which proposed dimensions shall be subject to the consent of Lessor, which consent shall not be unreasonably withheld.

k.   The following shall be inserted in the Lease Addendum immediately after Section 7 thereof:

8.   If Lessee is rendered unable, wholly or in part, by force majeure to carry out its obligations under this Lease, other than the obligation to indemnify or make money payments, Lessee shall give Lessor prompt written notice of the force majeure with reasonably full particulars concerning it; thereupon, the obligations of Lessee, so far as they are affected by the force majeure, shall be suspended during, but no longer than, the continuance of the force majeure. Lessee shall use all reasonable diligence to remove the force majeure situation as quickly as practicable. The requirement that any force majeure shall be remedied with all reasonable dispatch shall not require the settlement of strikes, lockouts, or other labor difficulty by Lessee, contrary to its wishes; how all such difficulties shall be handled shall be entirely within the discretion of Lessee.

9.   If this Lease covers a lesser interest in oil and gas than the entire and undivided fee simple estate therein, then the rents and royalties to be paid hereunder, shall be reduced proportionately, and such rents and royalties shall be paid only in the proportion which the interest therein covered by this Lease bears to the whole and undivided mineral interest and estate therein.

l.   Exhibit "A" to the Lease shall be deleted in its entirety, and replaced with Exhibit "A" attached hereto. **[NOTE: The only revisions to Exhibit "A" shall be the identification of State Leasehold and Non-State Leasehold.]**

5

1227403v1

Lycoming County Prothonotary Civil E-Filed - 13 Nov 2023 02:51:45 PM
200900001935 OR   6561   160

2. <u>Capitalized Terms</u>.  Capitalized terms used but not otherwise defined herein shall have the meanings given such terms in the Lease.

3. <u>Payment of Delay Rentals due December 1, 2007</u>.  Lessor hereby acknowledges and agrees that, prior to the execution of this Amendment, Lessee fulfilled its obligation to pay delay rentals as provided in the paragraph of the Lease entitled "Delay Rentals".

4. <u>Lease Remains in Effect</u>.  Except as modified by this Amendment, the Lease remains in full force and effect in accordance with its terms.  The Lease and this Amendment shall be read and construed as if there were one document from and after December 1, 2006.

5. <u>Counterparts</u>.  This Amendment may be executed in counterparts, each of which shall be deemed an original and all of which shall constitute but one and the same instrument.

[SIGNATURE PAGE IMMEDIATELY FOLLOWS THIS PAGE]

1227403v1

Lycoming County Prothonotary Civil E-Filed - 13 Nov 2023 02:51:45 PM

Instrument          book Page
200900001935 OR     6561  161

IN WITNESS WHEREOF, the parties have executed this Amendment by their duly authorized representatives as of the date first written above.

INTERNATIONAL DEVELOPMENT CORPORATION

By: _____

Name: C D Ratney

Title: Pres

County of _St. Mary's_
State of Maryland

By: _____

Name: RAMSAY A. Bovey

Title: Managing Partner

My Comm. Exp. 05/18/2010

VIRGINIA ENERGY CONSULTANTS, LLC

County/City of Fauquier
Commonwealth/State of Virginia
The foregoing instrument was acknowledged before me this 12 day of Feb, 2009, by Ramsay Barrett
(name of person seeking acknowledgement)
Notary Public
My commission expires: 12.31.2011

1227403v1                    7

Lycoming County Prothonotary Civil E-Filed - 13 Nov 2023 02:51:45 PM

Instrument
200900001935 OR    book Page
6561  162

## EXHIBIT A

## IDC OGM PROPERTIES FOR LEASE IN LYCOMING COUNTY, PA

| Warrantee Name Or Number | Township | Source Deed | | | | Reservation Deed | | | | | Survyd Acres | % Own | IDC Net | Shal Lease |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Date of Deed | Recorded DB at Page | | Acres | Date of Deed | Recorded DB at Page | | All P/O | Acres | | | | |
| 1602 | Howes/Fisher | Pine | 08/15/08 | 203 269 | 890 | 08/01/25 | 260 | 277 | A | 900 | 1,071 | 87.5% | 937 | |
| 1605 | Howes/Fisher | Pine | 12/07/83 | 162 300 | 400 | | | | | | | | | |
| 1605 | Howes/Fisher | Jackson | 12/07/83 | 162 300 | 590 | | | | | | | | | |
| 1605 | Howes/Fisher | Pine | 06/29/98 | 209 34 | 400 | | | | | | | | | |
| 1605 | Howes/Fisher | Jackson | 06/29/98 | 209 34 | 590 | 08/01/25 | 260 | 277 | A | 817 | 817 | 87.5% | 715 | |
| 1613 | Howes/Fisher | Jackson | 12/07/83 | 162 300 | 165 | | | | | | | | | |
| 1613 | Howes/Fisher | Jackson | 06/29/98 | 209 34 | 107 | 07/10/23 | 249 | 446 | P | | 108 | 67.5% | 95 | |
| 1615 | Howes/Fisher | Jackson | 12/07/83 | 162 300 | 773 | | | | | | | | | |
| 1615 | Howes/Fisher | Jackson | 08/15/08 | 203 269 | 105 | | | | | | | | | |
| 1615 | Howes/Fisher | Jackson | 06/29/98 | 209 34 | 95 | | | | | | | | | |
| 1615 | Howes/Fisher | Jackson | 10/26/50 | 373 220 | 95 | 07/03/19 | 230 | 337 | P | 210 | 234 | 87.5% | 205 | |
| 1620 | Howes/Fisher | Cogan House | 08/15/08 | 203 269 | 553 | | | | | | | | | |
| 1620 | Howes/Fisher | Pine | 08/15/08 | 203 269 | 250 | 07/10/23 | 249 | 446 | A | 833 | 854 | 87.5% | 747 | |
| 1621 | Howes/Fisher | Cogan House | 12/07/83 | 162 300 | 214 | 07/10/23 | 249 | 446 | A | 1,055 | 227 | 100% | 227 | |
| 1622 | Howes/Fisher | Cogan House | 02/16/03 | 192 381 | 990 | 07/10/23 | 249 | 446 | A | 990 | 1082 | 87.5% | 947 | |
| 1626 | Howes/Fisher | Cogan House | 08/15/08 | 203 269 | 541 | 07/10/23 | 249 | 446 | A | 541 | 541 | 87.5% | 473 | |
| 4788 | Miller/Murray | Jackson | 12/07/83 | 162 300 | 672 | | | | | | | | | |
| 4788 | Miller/Murray | Jackson | 06/29/98 | 209 34 | 1,109 | 12/28/27 | 280 | 164 | A | 854 | 1,176 | 100% | 1,176 | |
| 4789 | Miller/Murray | Jackson | 06/29/98 | 209 34 | 455 | 11/28/27 | 280 | 162 | P | 131 | 138 | 100% | 138 | |
| 4789 | Miller/Murray | McIntyre | 06/29/98 | 209 34 | 601 | 12/28/27 | 280 | 164 | P | 558 | 585 | 100% | 585 | |
| 5651 | Strawbridge J | McIntyre | 10/26/50 | 373 220 | 430 | 03/28/33 | 288 | 570 | P | 1098 | 80 | 50% | 40 | |
| 5652 | Strawbridge J | McIntyre | 12/07/83 | 162 300 | 871 | 01/31/18 | 227 | 528 | P | 222 | 222 | 100% | 222 | |
| 5652 | Strawbridge J | McIntyre | 10/26/50 | 373 220 | 1,098 | 11/28/27 | 280 | 162 | P | 60 | 60 | 100% | 60 | |
| 5652 | Strawbridge J | McIntyre | 10/26/50 | 373 220 | 1,098 | 03/28/33 | 288 | 570 | P | 321 | 767 | 50% | 384 | |
| 5653 | Strawbridge J | McIntyre | 12/07/83 | 162 300 | 850 | | | | | | | | | |
| 5653 | Strawbridge J | Jackson | 06/29/98 | 209 34 | 1,068 | | | | | | | | | |
| 5653 | Strawbridge J | McIntyre | 10/26/50 | 373 220 | 850 | 01/31/18 | 227 | 528 | A | 1,206 | 1,206 | 100% | 1,206 | |
| 5654 | Strawbridge J | McIntyre | 12/07/83 | 162 300 | 100 | | | | | | | | | |
| 5654 | Strawbridge J | Jackson | 12/07/83 | 162 300 | 1,098 | | | | | | | | | |
| 5654 | Strawbridge J | Jackson | 06/29/98 | 209 34 | 1,088 | 08/31/18 | 227 | 528 | A | 1,206 | 1,206 | 100% | 1,206 | |
| 5656 | Strawbridge J | Cogan/Jack/McI | 02/16/03 | 192 381 | 389 | 08/31/18 | 227 | 528 | P | 389 | 389 | 100% | 389 | |
| 5657 | Strawbridge J | McIntyre | 02/16/03 | 192 381 | 389 | 08/31/18 | 227 | 528 | P | 389 | 389 | 100% | 389 | |
| 5658 | Strawbridge J | McIntyre | 12/07/83 | 162 300 | 248 | 08/31/18 | 227 | 528 | | | | | | |
| 5668 | Strawbridge J | McIntyre | 05/25/03 | 183 326 | 164 | 08/31/18 | 227 | 528 | A | 412 | 1,034 | 100% | 1,034 | |
| 5680 | Strawbridge J | McIntyre | 10/26/50 | 373 220 | 851 | 03/28/33 | 288 | 570 | A | 1,098 | 1,215 | 50% | 608 | |
| 5665 | Strawbridge J | Cogan Hs/Lewis | 06/29/98 | 209 34 | 948 | 12/15/21 | 245 | 65 | A | 949 | 949 | 87.5% | 830 | X |
| 5667 | Strawbridge J | Lewis | 06/29/98 | 209 34 | 1,098 | 05/26/13 | 213 | 385 | A | 1,100 | 1,097 | 87.5% | 960 | X |
| 5753 | Strawbridge J | Lewis | 06/29/98 | 209 34 | 719 | 07/24/19 | 231 | 171 | A | 717 | 717 | 87.5% | 627 | X |

Lycoming County Prothonotary Civil E-Filed - 13 Nov 2023 02:51:45 PM

Instrument        book  Page
200900001935 OR    6561   163

| Warrantee Name Or Number | Township | Source Deed | | | Reservation Deed | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Date of Deed | Recorded DB at Page | Acres | Date of Deed | Recorded DB at Page | All P/O | Acres | Survyd Acres | % Own | IDC Net | Shel Lease |
| Affick    Thomas | Cascade | 04/28/50 | 369  317 | 408 | 03/28/33 | 288  570 | A | 408 | 408 | 50% | 204 | |
| Antis    Frederick | McIntyre | 06/29/98 | 209   34 | 408 | 12/27/23 | 250  335 | | 408 | 432 | 100% | 432 | |
| Barclay George | Cascade/McIntyre | 04/28/50 | 369  317 | 408 | 03/28/33 | 288  570 | A | 408 | 462 | 50% | 231 | |
| Barker  William | Lewis | 06/10/26 | 262  254 | 91 | 10/25/24 | 254  587 | P | 128 | 126 | 87.5% | 110 | X |
| Barton  William | McNett | 06/08/28 | 271  174 | 408 | 03/28/33 | 288  570 | A | 408 | 428 | 50% | 214 | |
| Bayard James | McIntyre | 04/28/50 | 369  317 | 300 | 03/28/33 | 288  570 | A | 408 | 430 | 50% | 215 | |
| Bayard John | McNett | 04/28/50 | 369  317 | 408 | 03/28/33 | 288  570 | P | 408 | 202 | 50% | 101 | |
| Bayard Steven | McNett | 04/28/50 | 369  317 | 408 | 03/28/33 | 288  570 | A | 408 | 431 | 50% | 216 | |
| Beck    Henry | Plunk Ck | 06/29/98 | 209   34 | 68 | 12/01/27 | 275  373 | P | 68 | 159 | 87.5% | 151 | X |
| Biddle  Clement | Cascade | 04/28/50 | 369  317 | 408 | 03/28/33 | 288  570 | A | 408 | 443 | 50% | 222 | |
| Brown  William | McNett | 06/29/98 | 209   34 | 408 | 12/27/23 | 250  335 | A | 460 | 460 | 100% | 460 | |
| Caldwe David | Cascade | 04/28/50 | 369  317 | 413 | 03/28/33 | 288  570 | A | 413 | 408 | 50% | 204 | |
| Chancelk William | McIntyre | 04/28/50 | 369  317 | 289 | 03/28/33 | 288  570 | A | 290 | 313 | 50% | 157 | |
| Cutbusl Ed | Cascade | 04/28/50 | 369  316 | 408 | 03/28/33 | 288  570 | A | 408 | 408 | 50% | 204 | |
| Dale    Samuel | Cascade | 04/28/50 | 369  317 | 115 | 03/28/33 | 288  570 | | | | | | |
| Dale    Samuel | McNett | 04/28/50 | 369  317 | 408 | 03/28/33 | 288  570 | A | 408 | 441 | 50% | 221 | |
| Delaney Daniel | Cascade | 04/28/50 | 369  316 | 208 | 03/28/33 | 288  570 | | | | | | |
| Delaney Daniel | McNett | 04/28/50 | 369  316 | 200 | 03/28/33 | 288  570 | A | 408 | 479 | 50% | 240 | |
| Dunlap  John #48 | McIntyre | 10/26/50 | 373  220 | 50 | 03/28/33 | 288  570 | P | 513 | 51 | 50% | 26 | |
| Fox     Joseph | Cascade | 04/28/50 | 369  317 | | 03/28/33 | 288  570 | A | 408 | 407 | 50% | 204 | |
| Francis Teuch | Cascade | 04/28/50 | 369  317 | 401 | 03/28/33 | 288  570 | A | 408 | 408 | 50% | 204 | |
| Garrity Mary | Cascade | 04/28/50 | 369  316 | 408 | 03/28/33 | 288  570 | A | 408 | 432 | 50% | 216 | |
| George David | Cascade | 04/28/50 | 389  317 | 300 | 03/28/33 | 288  570 | | | | | | |
| George David | McNett | 04/28/50 | 369  317 | 108 | 03/28/33 | 288  570 | A | 408 | 413 | 50% | 207 | |
| George Edward | Cascade | 04/28/50 | 369  317 | 408 | 03/28/33 | 288  570 | A | 408 | 416 | 50% | 208 | |
| George Thomas | McIntyre | 04/28/50 | 369  316 | 50 | 03/28/33 | 288  570 | | | | | | |
| George Thomas | Cascade | 04/28/50 | 369  317 | 362 | 03/28/33 | 288  570 | A | 413 | 439 | 50% | 220 | |
| Gratz   Michael | McIntyre | 04/28/50 | 369  317 | 408 | 03/28/33 | 288  570 | A | 408 | 522 | 50% | 261 | |
| Gratz   Michael | McNett | 04/28/50 | 369  317 | 408 | 03/28/33 | 288  570 | A | 408 | 448 | 50% | 224 | |
| Gray    William | McNett | 04/28/50 | 369  317 | 408 | 03/28/33 | 288  570 | P | 408 | 408 | 50% | 204 | |
| Harmer Josiah | Cascade | 04/28/50 | 369  317 | 408 | 03/28/33 | 288  570 | A | 408 | 423 | 50% | 212 | |
| Harrison William | Plunkens Ck | Sullivan County tax sale | | 110 | 11/01/22 | 247  508 | P | 250 | 265 | 100% | 265 | |
| Hawkin John | Cascade | 04/28/50 | 369  317 | 501 | 03/28/33 | 288  570 | A | 408 | 485 | 50% | 243 | |
| Hillegas Michael | McNett | 04/28/50 | 369  317 | 150 | 03/28/33 | 288  570 | P | 29 | | 50% | 0 | |
| Hillegas Michael | Cascade | 04/28/50 | 369  317 | 200 | 03/28/33 | 288  570 | P | 408 | 409 | 50% | 205 | |
| Hutchnak William | McNett | 04/28/50 | 369  317 | 408 | 03/28/33 | 288  570 | A | 408 | 458 | 50% | 229 | |
| James   William | Gamble | 04/28/50 | 369  317 | 422 | 03/28/33 | 288  570 | A | 423 | 450 | 50% | 225 | X |
| Jones   William | McNett | 04/28/50 | 369  317 | 408 | 03/28/33 | 288  570 | A | 408 | 431 | 50% | 216 | |
| Lennox Hugh | McNett | 04/28/50 | 369  317 | 408 | 03/28/33 | 288  570 | P | 408 | 175 | 50% | 88 | |
| Levy    Aaron | McIntyre | 04/28/50 | 369  317 | 368 | 03/28/33 | 288  570 | P | 368 | 304 | 50% | 152 | |
| Levy    Sampson | Cascade | 04/28/50 | 369  317 | 408 | 03/28/33 | 288  570 | A | 408 | 441 | 50% | 221 | |
| Lewis   William | Cascade | 04/28/50 | 369  317 | 408 | 03/28/33 | 288  570 | P | 408 | 475 | 50% | 238 | |
| Long    Daniel | McIntyre | 04/28/50 | 369  317 | 250 | 03/28/33 | 288  570 | | | | | | |
| Long    Daniel | McNett | 04/28/50 | 369  317 | 158 | 03/28/33 | 288  570 | A | 408 | 411 | 50% | 206 | |
| Mifflin Jonathan | Cascade | 04/28/50 | 369  316 | 408 | 03/28/33 | 288  570 | A | 408 | 441 | 50% | 221 | |
| Miles   James | McIntyre | 10/26/50 | 373  220 | 408 | 03/28/33 | 288  570 | A | 408 | 439 | 50% | 220 | |
| Miles   Samuel Jr | McIntyre | 04/28/50 | 369  317 | 408 | 03/28/33 | 288  570 | A | 408 | 384 | 50% | 192 | |

Lycoming County Prothonotary Civil E-Filed - 13 Nov 2023 02:51:45 PM

Instrument        book Page
200900001935 OR    6561  164

| Warrantee Name Or Number | Township | Source Deed | | | Reservation Deed | | | | | Survyd Acres | % Own | IDC Net | Shal Lease |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Date of Deed | Recorded DB at Page | Acres | Date of Deed | Recorded DB at Page | All P/O | Acres | | | | | |
| Miller   Peter | Cascade | 04/28/50 | 369  316 | 413 | 03/28/33 | 288  570 | A | 414 | 450 | 50% | 225 | |
| Morgan Jacob | McIntyre | 04/28/50 | 369  317 | 408 | 03/28/33 | 288  570 | A | 408 | 378 | 50% | 189 | |
| Perry   Rowland | Cascade | 04/28/50 | 369  317 | 408 | | | | | | | | |
| Perry   Rowland | McIntyre | 04/28/50 | 369  316 | 408 | 03/28/33 | 288  570 | A | 408 | 446 | 50% | 223 | |
| Potter   John | Plunketts Ck | | Sullivan County tax sale | 436 | 11/01/22 | 247  508 | A | 551 | 551 | 100% | 551 | |
| Price   John | McIntyre | 04/28/50 | 369  317 | 408 | 03/28/33 | 288  570 | A | 408 | 431 | 50% | 216 | |
| Rakestra Robt/Jos | McNett | 04/28/50 | 369  317 | 408 | 03/28/33 | 288  570 | A | 408 | 431 | 50% | 216 | |
| Rankin Robert | Cascade | 04/28/50 | 369  317 | 100 | 03/28/33 | 288  570 | | | | | | |
| Rankin Robert | McNett | 04/28/50 | 369  317 | 301 | 03/28/33 | 288  570 | A | 408 | 431 | 50% | 216 | |
| Rawle  William | Cascade | 04/28/50 | 369  317 | 408 | 03/28/33 | 288  570 | A | 408 | 458 | 50% | 229 | |
| Reynok James | Cascade | 04/28/50 | 369  317 | 408 | 03/28/33 | 288  570 | A | 408 | 453 | 50% | 227 | |
| Reynok James | McIntyre | 04/28/50 | 369  316 | 408 | | | | | | | | |
| Reynok Thomas | Cascade | 04/28/50 | 369  316 | 408 | 03/28/33 | 288  570 | A | 408 | 408 | 50% | 204 | |
| Roberts Algernon | McIntyre | 04/28/50 | 369  317 | 408 | 03/28/33 | 288  570 | A | 408 | 377 | 50% | 189 | |
| Shaw   Robert | McIntyre | 04/28/50 | 369  317 | 408 | 03/28/33 | 288  570 | A | 408 | 387 | 50% | 194 | |
| Shaw   William | McNett | 06/08/28 | 271  174 | 408 | 03/28/33 | 288  570 | A | 408 | 450 | 50% | 225 | |
| Singer  Abraham | McIntyre | 10/26/50 | 373  220 | 408 | 03/28/33 | 288  570 | A | 408 | 431 | 50% | 216 | |
| Singer  John | McIntyre | 04/28/50 | 369  316 | 248 | 03/28/33 | 288  570 | A | 248 | 256 | 50% | 128 | |
| Smith   Benjamin | Cascade | 04/28/50 | 369  317 | 408 | 03/28/33 | 288  570 | A | 408 | 439 | 50% | 220 | |
| Smith   John | McIntyre | 06/29/98 | 209   34 | 382 | 05/08/23 | 250  335 | A | 401 | 402 | 100% | 402 | |
| Smith   Robert | McIntyre | 04/28/50 | 369  317 | 300 | 03/28/33 | 288  570 | | | | | | |
| Smith   Robert | McNett | 04/28/50 | 369  317 | 108 | 03/28/33 | 288  570 | A | 408 | 467 | 50% | 234 | |
| Stewart Walter | McIntyre | 04/28/50 | 369  317 | 408 | 03/28/33 | 288  570 | A | 408 | 431 | 50% | 216 | |
| Stewart William | McIntyre | 04/28/50 | 369  317 | 408 | 03/28/33 | 288  570 | A | 408 | 400 | 50% | 200 | |
| Suppler Jonathan | Cascade | 04/28/50 | 369  317 | 413 | 03/28/33 | 288  570 | A | 413 | 379 | 50% | 190 | |
| Thomas Joseph | Cascade | 04/28/50 | 369  317 | 408 | 03/28/33 | 288  570 | A | 408 | 436 | 50% | 218 | |
| Tilghma Edward | Cascade | 04/28/50 | 369  317 | 408 | 03/28/33 | 288  570 | A | 408 | 443 | 50% | 222 | |
| Tudor   George | Cascade | 04/28/50 | 369  317 | 408 | 03/28/33 | 288  570 | A | 408 | 448 | 50% | 224 | |

Total Lycoming County                                    42,312            28,447

Lycoming County Prothonotary Civil E-Filed - 13 Nov 2023 02:51:45 PM

# EXHIBIT C

Lycoming County Prothonotary Civil E-Filed - 13 Nov 2023 02:51:45 PM

```
Instrument         book Page
200900001934 OR    6561  147
```

## AMENDMENT TO OIL AND GAS LEASE

| | |
|---|---|
| **State:** | **Pennsylvania** |
| **County:** | **Lycoming** |
| **Lessor:** | **International Development Corporation, a Colorado Corporation, P.O. Box 9994, Washington, DC 20016** |
| **Lessee:** | **Quest Eastern Resource, LLC, successor in interest to Virginia Energy Consultants, LLC** |

**Effective Date: December 1, 2006**

WHEREAS, On December 1, 2006, Lessor, named above, executed and delivered to Virginia Energy Consultants, LLC, an oil and gas lease (the "Lease"), which is recorded in the form of a memorandum in Volume 6197, Page 327 in the records of the county and state named above. The Lease covers 42,079 gross acres across various lands in Lycoming County, Pennsylvania, which are more accurately described in the Lease.

WHEREAS, the Lease was amended by Lessor and Lessee on December 11, 2007, but made effective as of December 1, 2006;

WHEREAS, Virginia Energy Consultants, LLC, assigned a portion of its right, title and interest in said Lease to PetroEdge Resources (WV) LLC, reserving unto itself an overriding royalty interest, by an Assignment dated December 13, 2007, and recorded in the Offices of the Recorder of Deeds at Instrument Number 200800001326, or Book 6244, Page 262;

WHEREAS, PetroEdge Resources (WV) LLC changed its name to Quest Eastern Resource, LLC, following the acquisition of the company by Quest Resource Corporation in July 2008, and;

WHEREAS, International Development Corporation and Quest Eastern Resource, LLC, formerly PetroEdge Resources (WV) LLC, Lessor and Lessee respectively hereunder, desire to ratify and to amend the Lease in order to facilitate the development of the oil, gas and other minerals subject to such Lease.

NOW, THEREFORE, in consideration of the mutual agreements and covenants set forth herein, and intending to be bound, the parties agree to the terms, condition and amendments as follows:

1) The Lease is hereby ratified deemed by Lessor and Lessee to be in full force and effect. The Lease is presently and validly owned by Lessee, named above. It is the desire of the Lessor and Lessee to amend the Lease as to the particular provisions set out below.

2 Section 2(a)(i) and Section 2(a)(ii) of the Amendment to Oil and Gas Lease shall be deleted in their entirety and replaced with the following:

{30060695.1}

```
200900001934
Filed for Record in
LYCOMING COUNTY PA
ANNABEL MILLER
02-13-2009 At 10:11 am.
LESS 30 YR        26.50
OR   book 6561 Page 147 - 154
```

FILED
LYCOMING COUNTY
2009 FEB 13  A 10 10
ANNABEL MILLER
RECORDER OF DEEDS

Lycoming County Prothonotary Civil E-Filed - 13 Nov 2023 02:51:45 PM

Instrument            book  Page
200900001934 OR      6561  148

Section 2(a)(i) – On or before February 1, 2009, Lessee shall initiate the well permitting process by submitting an initial governmental filing for not less than two (2) wells on the Leasehold acreage identified as "Non-State Leasehold" on Exhibit "A" attached hereto. Each such well shall be permitted to penetrate the Devonian Marcellus Shale and reach total depth in or below the Devonian Onondaga formation.  Lessee shall continue with the permitting process as a reasonably prudent operator up to, and including, drilling the wells hereto described.

Section 2(a)(ii) – Within one (1) year of the day upon which Lessee obtains all surface rights Lessee deems necessary in its sole discretion to explore for, develop and produce oil and gas from the Leasehold acreage identified as "State Leasehold" on Exhibit "A" (such day, the "Surface Right Day"), Lessee shall spud two (2) wells on the State Leasehold, each of which shall, upon drilling and completion, penetrate the Devonian Marcellus Shale and reach a total depth in or below the Devonian Onondaga formation.

3)      The first sentence of Section 2(a)(iii) of the Amendment to Oil and Gas Lease shall be amended to read:

If Lessee fulfills its obligations under Section 2(a)(i) or Section 2(a)(ii) of this Lease Addendum, Lessee shall have the right but not the obligation to drill additional wells on the Leasehold acreage for so long as Lessee spuds two (2) wells on the Leasehold acreage per twelve (12) consecutive calendar month period, with the first such twelve (12) consecutive calendar month period commencing on the one (1) year anniversary of the Surface Right Day.

4)      The first sentence of Section 3(a) of the Amendment to Oil and Gas Lease shall be amended to read:

On, or before, January 2, 2009, Lessee shall be required to:  (i) release to Lessor any Non-State Leasehold not then included in a unit for a well drilled hereunder in accordance with the terms of Section 4 of this Lease Addendum; or (ii) pay an additional rental in respect of any Non-State Leasehold not then included in a unit for a well drilled hereunder in accordance with the terms of Section 4 of this Lease Addendum that Lessee desires to remain subject to this Lease in an amount equal to $75 per net mineral acre in respect of such acreage (the "Non-State Leasehold Additional Rental", and such Non-State Leasehold for which such payment is made, the "Non-State Remaining Leasehold").

5)      The first sentence of Section 3(b) of the Amendment to Oil and Gas Lease shall be amended to read:

On, or before, January 2, 2009, Lessee shall be required to:  (i) release to Lessor any State Leasehold not then included in a unit for a well drilled hereunder in accordance with the terms of Section 4 of this Lease Addendum; or (ii) pay an additional rental in respect of any State Leasehold not then included in a unit for a well drilled hereunder in

{S0060695.1}

Lycoming County Prothonotary Civil E-Filed - 13 Nov 2023 02:51:45 PM
Instrument          book Page
200900001934 OR    6561  149

accordance with the terms of Section 4 of this Lease Addendum that Lessee desires to remain subject to this Lease in an amount equal to $75 per net mineral acre in respect of such acreage (the "State Leasehold Additional Rental", and such State Leasehold for which such payment is made, the "State Remaining Leasehold").

6)      A fifth paragraph shall be added to Section 3 of the Lease Addendum and shall be numbered as "Section 3(e)".  Such paragraph shall read:

Notwithstanding anything to the contrary in this Section 3, at the end of said primary term, any Non-State Remaining Leasehold and any State Remaining Leasehold shall be released to Lessor by Lessee, unless Lessee has drilled a well during the primary term, or any extension thereof.  In that event, this Lease shall be extended for 180 days and Lessee shall have a continuing option to drill additional wells on the Leasehold so long thereafter as Lessee commences drilling operations on a well within said 180 day period and continues such drilling program by allowing no more than 180 days to lapse between the completion or abandonment of one well and commencement of drilling operations on the next well.

7)      Section 4(iv) of the Lease Addendum shall be deleted in its entirety and replaced with the following:

Until the point in time, if any, that there is insufficient acreage remaining under this Lease that is not already included in a unit consisting solely of the leased premises, for any unit pooled for gas, Lessee shall require the Lessor's written consent in order to pool the leased acreage with other acreage not covered by this lease in order to form a gas unit no larger than the maximum size unit required by this Lease.  Such consent shall not unreasonably be withheld or delayed.  After such point in time, the Lessor's written consent shall no longer be required.  Lessor agrees that any well included in a unit pooled hereunder, whether or not the well is located on the Leasehold, shall be credited towards any drilling obligations remaining under this Lease.

8)      The following shall be inserted in the Lease Addendum immediately after Section 9 thereof:

Lessee shall continue to make a good faith effort to assist Lessor in clearing title to lands believed to be owned by Lessor.  In the event that title is cleared to the satisfaction of Lessee, it is agreed that such additional lands will become subject to the Lease.

If any of the amendments set out above vary from or are different than any provisions or terms stated in the Lease or any previous amendments thereof, the amending provisions stated herein shall specifically supersede and replace the provisions or terms originally contained in the Lease, or such previous amendments.

{S0060695.1}

Lycoming County Prothonotary Civil E-Filed - 13 Nov 2023 02:51:45 PM

Instrument                    book Page
200900001934 OR    6561   150

This Amendment may be executed in multiple counterparts by Lessor.  When executed, each counterpart shall be binding on the party signing it, regardless of whether all Lessor execute this Amendment.

This Amendment is signed by Lessor and Lessee as of the date of the acknowledgment of their respective signatures, but is effective for all purposes as of the Effective Date stated above.

**International Development Corporation**

By: _____

Name: _C. Rainey_____

Title: _President_____

**Quest Eastern Resource, LLC**

By: _____

Name: _____

Title: _____

STATE OF _Maryland_ §
§
COUNTY OF _St. Mary's_ §

CHARLES D. RAINEY    This instrument was acknowledged before me on _2/12/09_ by _____ of International Development Corporation, a Colorado corporation, on behalf of said corporation.

My Comm. Exp. 05/18/2010

Notary Public, State of _MD_

[50060695.1]

Lycoming County Prothonotary Civil E-Filed - 13 Nov 2023 02:51:45 PM

```
                    Instrument              book Page
                    200900001934 OR         6561  151
```

this Amendment.

      This Amendment is signed by Lessor and Lessee as of the date of the acknowledgment of their respective signatures, but is effective for all purposes as of the Effective Date stated above.

**International Development Corporation**      **Quest Eastern Resource, LLC**

By: _____      By: _____

Name: _____      Name: _David W. Bolton_____

Title: _____      Title: _Exec. V.P. -Land_____


STATE OF _____ §
                     §
COUNTY OF _____ §

      This instrument was acknowledged before me on _____ by _____, _____ of International Development Corporation, a Colorado corporation, on behalf of said corporation.


                   _____

                   Notary Public, State of _____


STATE OF OKLAHOMA §
                       §
COUNTY OF OKLAHOMA §

      This instrument was acknowledged before me on February 12, 2009 by David W. Bolton,   Executive Vice President - Land of Quest Eastern Resource, a Delaware limited liability company, on behalf of said limited liability company.

                   _____

                   Notary Public, State of Oklahoma

{50060695.1}

Lycoming County Prothonotary Civil E-Filed - 13 Nov 2023 02:51:45 PM

```
                                              Instrument          book Page
                                              200900001934 OR     6561  152
```

EXHIBIT A

## IDC OGM PROPERTIES FOR LEASE IN LYCOMING COUNTY, PA

| Warrantee Name Or Number | Township | Source Deed | | | Reservation Deed | | | | | Survyd Acres | % Own | IDC Net | Shal Lease |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Date of Deed | Recorded DB at Page | Acres | Date of Deed | Recorded DB at Page | Ali P/O | Acres | | | | | |
| 1602 | Hewes/Fisher | Pine | 08/15/08 | 203 269 | 890 | 08/01/25 | 260 277 | A | 900 | 1,071 | 87.5% | 937 | |
| 1605 | Hewes/Fisher | Pine | 12/07/83 | 162 300 | 400 | | | | | | | | |
| 1605 | Hewes/Fisher | Jackson | 12/07/83 | 162 300 | 590 | | | | | | | | |
| 1605 | Hewes/Fisher | Jackson | 06/29/98 | 209 34 | 400 | | | | | | | | |
| 1605 | Hewes/Fisher | Jackson | 06/29/98 | 209 34 | 590 | 08/01/25 | 260 277 | A | 817 | 817 | 87.5% | 715 | |
| 1613 | Hewes/Fisher | Jackson | 12/07/83 | 162 300 | 165 | | | | | | | | |
| 1613 | Hewes/Fisher | Jackson | 06/29/98 | 209 34 | 107 | 07/10/23 | 249 446 | P | | 108 | 87.5% | 95 | |
| 1615 | Hewes/Fisher | Jackson | 12/07/83 | 162 300 | 773 | | | | | | | | |
| 1615 | Hewes/Fisher | Jackson | 08/15/08 | 203 269 | 105 | | | | | | | | |
| 1615 | Hewes/Fisher | Jackson | 06/29/98 | 209 34 | 95 | | | | | | | | |
| 1615 | Hewes/Fisher | Jackson | 10/26/50 | 373 220 | 95 | 07/03/19 | 230 337 | P | 210 | 234 | 87.5% | 205 | |
| 1620 | Hewes/Fisher | Cogan House | 08/15/08 | 203 269 | 553 | | | | | | | | |
| 1620 | Hewes/Fisher | Pine | 08/15/08 | 203 269 | 250 | 07/10/23 | 249 446 | A | 833 | 854 | 87.5% | 747 | |
| 1621 | Hewes/Fisher | Cogan House | 12/07/83 | 162 300 | 214 | 07/10/23 | 249 446 | A | 1,055 | 227 | 100% | 227 | |
| 1622 | Hewes/Fisher | Cogan House | 02/16/03 | 192 381 | 990 | 07/10/23 | 249 446 | A | 990 | 1082 | 87.5% | 947 | |
| 1626 | Hewes/Fisher | Cogan House | 08/15/08 | 203 269 | 541 | 07/10/23 | 249 446 | A | 541 | 541 | 87.5% | 473 | |
| 4788 | Miller/Murray | Jackson | 12/07/83 | 162 300 | 672 | | | | | | | | |
| 4788 | Miller/Murray | Jackson | 06/29/98 | 209 34 | 1,109 | 12/28/27 | 280 164 | A | 854 | 1,176 | 100% | 1,176 | |
| 4789 | Miller/Murray | Jackson | 06/29/98 | 209 34 | 455 | 11/28/27 | 280 162 | P | 131 | 138 | 100% | 138 | |
| 4789 | Miller/Murray | McIntyre | 06/29/98 | 209 34 | 601 | 12/28/27 | 280 164 | P | 558 | 585 | 100% | 585 | |
| 5651 | Strawbridge J | McIntyre | 10/26/50 | 373 220 | 430 | 03/28/33 | 288 570 | P | 1098 | 80 | 50% | 40 | |
| 5652 | Strawbridge J | McIntyre | 12/07/83 | 162 300 | 871 | 01/31/18 | 227 528 | P | 222 | 222 | 100% | 222 | |
| 5652 | Strawbridge J | McIntyre | 10/26/50 | 373 220 | 1,098 | 11/28/27 | 280 162 | P | 60 | 60 | 100% | 60 | |
| 5652 | Strawbridge J | McIntyre | 10/26/50 | 373 220 | 1,098 | 03/28/33 | 288 570 | P | 321 | 767 | 50% | 384 | |
| 5653 | Strawbridge J | Jackson | 12/07/83 | 162 300 | 850 | | | | | | | | |
| 5653 | Strawbridge J | Jackson | 06/29/98 | 209 34 | 1,068 | | | | | | | | |
| 5653 | Strawbridge J | McIntyre | 10/26/50 | 373 220 | 850 | 01/31/18 | 227 528 | A | 1,206 | 1,206 | 100% | 1,206 | |
| 5654 | Strawbridge J | Jackson | 12/07/83 | 162 300 | 100 | | | | | | | | |
| 5654 | Strawbridge J | Jackson | 12/07/83 | 162 300 | 1,098 | | | | | | | | |
| 5654 | Strawbridge J | Jackson | 06/29/98 | 209 34 | 1,088 | 08/31/18 | 227 528 | A | 1,206 | 1,206 | 100% | 1,206 | |
| 5656 | Strawbridge J | Cogha/Jack/McI | 02/16/03 | 192 381 | 389 | 08/31/18 | 227 528 | P | 389 | 389 | 100% | 389 | |
| 5657 | Strawbridge J | McIntyre | 02/16/03 | 192 381 | 389 | 08/31/18 | 227 528 | P | 389 | 389 | 100% | 389 | |
| 5658 | Strawbridge J | McIntyre | 12/07/83 | 162 300 | 248 | 08/31/18 | 227 528 | | | | | | |
| 5658 | Strawbridge J | McIntyre | 05/25/03 | 183 326 | 164 | 08/01/18 | 227 528 | A | 412 | 1,034 | 100% | 1,034 | |
| 5680 | Strawbridge J | McIntyre | 10/26/50 | 373 220 | 851 | 03/28/33 | 288 570 | A | 1,098 | 1,215 | 50% | 608 | |
| 5665 | Strawbridge J | Cogan Hs/Lewis | 06/29/98 | 209 34 | 948 | 12/15/21 | 245 65 | A | 949 | 949 | 87.5% | 830 | X |
| 5667 | Strawbridge J | Lewis | 06/29/98 | 209 34 | 1,098 | 05/26/13 | 213 385 | A | 1,100 | 1,097 | 87.5% | 960 | X |
| 5753 | Strawbridge J | Lewis | 06/29/98 | 209 34 | 719 | 07/24/19 | 231 171 | A | 717 | 717 | 87.5% | 627 | X |

Lycoming County Prothonotary Civil E-Filed - 13 Nov 2023 02:51:45 PM

Instrument book Page
200900001934 OR 6561 153

| Warrantee Name Or Number | Township | Source Deed | | | | Reservation Deed | | | All P/O | Acres | Survyd Acres | % Own | IDC Net | Shal Lease |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Date of Deed | Recorded DB | at Page | Acres | Date of Deed | Recorded DB | at Page | | | | | | |
| Affick Thomas | Cascade | 04/28/50 | 369 | 317 | 408 | 03/28/33 | 288 | 570 | A | 408 | 408 | 50% | 204 | |
| Antis Frederick | McIntyre | 06/29/98 | 209 | 34 | 408 | 12/27/23 | 250 | 335 | | 408 | 432 | 100% | 432 | |
| Barclay George | Cascade/McIntyre | 04/28/50 | 369 | 317 | 408 | 03/28/33 | 288 | 570 | A | 408 | 462 | 50% | 231 | |
| Barker William | Lewis | 06/10/26 | 262 | 254 | 91 | 10/25/24 | 254 | 587 | P | 126 | 126 | 87.5% | 110 | X |
| Barton William | McNett | 06/08/28 | 271 | 174 | 408 | 03/28/33 | 288 | 570 | A | 408 | 428 | 50% | 214 | |
| Bayard James | McIntyre | 04/28/50 | 369 | 317 | 300 | 03/28/33 | 288 | 570 | A | 408 | 430 | 50% | 215 | |
| Bayard John | McNett | 04/28/50 | 369 | 317 | 408 | 03/28/33 | 288 | 570 | P | 408 | 202 | 50% | 101 | |
| Bayard Steven | McNett | 04/28/50 | 369 | 317 | 408 | 03/28/33 | 288 | 570 | A | 408 | 431 | 50% | 216 | |
| Beck Henry | Plunk Ck | 06/29/98 | 209 | 34 | 68 | 12/01/27 | 275 | 373 | P | 68 | 159 | 87.5% | 151 | X |
| Biddie Clement | Cascade | 04/28/50 | 369 | 317 | 408 | 03/28/33 | 288 | 570 | A | 408 | 408 | 50% | 222 | |
| Brown William | McNett | 05/29/98 | 209 | 34 | 408 | 12/27/23 | 250 | 335 | A | 460 | 460 | 100% | 460 | |
| Caldwe David | Cascade | 04/28/50 | 369 | 317 | 408 | 03/28/33 | 288 | 570 | A | 413 | 408 | 50% | 204 | |
| Chancelk William | McIntyre | 04/28/50 | 369 | 317 | 289 | 03/28/33 | 288 | 570 | A | 290 | 313 | 50% | 157 | |
| Cutbust Ed | Cascade | 04/28/50 | 369 | 316 | 408 | 03/28/33 | 288 | 570 | A | 408 | 408 | 50% | 204 | |
| Dale Samuel | Cascade | 04/28/50 | 369 | 317 | 115 | 03/28/33 | 288 | 570 | | | | | | |
| Dale Samuel | McNett | 04/28/50 | 369 | 317 | 408 | 03/28/33 | 288 | 570 | A | 408 | 441 | 50% | 221 | |
| Delaney Daniel | Cascade | 04/28/50 | 369 | 316 | 208 | 03/28/33 | 288 | 570 | | | | | | |
| Delaney Daniel | McNett | 04/28/50 | 369 | 316 | 200 | 03/28/33 | 288 | 570 | A | 408 | 479 | 50% | 240 | |
| Dunlap John #48 | McIntyre | 10/26/50 | 373 | 220 | 50 | 03/28/33 | 288 | 570 | P | 513 | 51 | 50% | 26 | |
| Fox Joseph | Cascade | 04/28/50 | 369 | 317 | | 03/28/33 | 288 | 570 | A | 408 | 407 | 50% | 204 | |
| Francis Teuch | Cascade | 04/28/50 | 369 | 317 | 401 | 03/28/33 | 288 | 570 | A | 408 | 408 | 50% | 204 | |
| Garrity Mary | Cascade | 04/28/50 | 369 | 316 | 408 | 03/28/33 | 288 | 570 | A | 408 | 432 | 50% | 216 | |
| George David | Cascade | 04/28/50 | 369 | 317 | 300 | 03/28/33 | 288 | 570 | | | | | | |
| George David | McNett | 04/28/50 | 369 | 317 | 108 | 03/28/33 | 288 | 570 | A | 408 | 413 | 50% | 207 | |
| George Edward | Cascade | 04/28/50 | 369 | 317 | 408 | 03/28/33 | 288 | 570 | A | 408 | 416 | 50% | 208 | |
| George Thomas | McIntyre | 04/28/50 | 369 | 316 | 50 | 03/28/33 | 288 | 570 | | | | | | |
| George Thomas | Cascade | 04/28/50 | 369 | 317 | 362 | 03/28/33 | 288 | 570 | A | 413 | 439 | 50% | 220 | |
| Gratz Michael | McIntyre | 04/28/50 | 369 | 317 | 408 | 03/28/33 | 288 | 570 | A | 408 | 522 | 50% | 261 | |
| Gratz Michael | McNett | 04/28/50 | 369 | 317 | 408 | 03/28/33 | 288 | 570 | A | 408 | 448 | 50% | 224 | |
| Gray William | McNett | 04/28/50 | 369 | 317 | 408 | 03/28/33 | 288 | 570 | P | 408 | 408 | 50% | 204 | |
| Harmer Josiah | Cascade | 04/28/50 | 369 | 317 | 408 | 03/28/33 | 288 | 570 | A | 408 | 423 | 50% | 212 | |
| Harrison William | Plunketts Ck | Sullivan County tax sale | | | 110 | 11/01/22 | 247 | 508 | P | 250 | 285 | 100% | 285 | |
| Hawkin John | Cascade | 04/28/50 | 369 | 317 | 501 | 03/28/33 | 288 | 570 | A | 408 | 485 | 50% | 243 | |
| Hillegas Michael | McNett | 04/28/50 | 369 | 317 | 150 | 03/28/33 | 288 | 570 | P | 29 | | 50% | 0 | |
| Hillegas Michael | Cascade | 04/28/50 | 369 | 317 | 200 | 03/28/33 | 288 | 570 | P | 408 | 409 | 50% | 205 | |
| Hutchins William | McNett | 04/28/50 | 369 | 317 | 408 | 03/28/33 | 288 | 570 | A | 408 | 458 | 50% | 229 | |
| James William | Gamble | 04/28/50 | 369 | 317 | 422 | 03/28/33 | 288 | 570 | A | 423 | 450 | 50% | 225 | X |
| Jones William | McNett | 04/28/50 | 369 | 317 | 408 | 03/28/33 | 288 | 570 | A | 408 | 431 | 50% | 216 | |
| Lennox Hugh | McNett | 04/28/50 | 369 | 317 | 408 | 03/28/33 | 288 | 570 | P | 408 | 175 | 50% | 88 | |
| Levy Aaron | McIntyre | 04/28/50 | 369 | 317 | 368 | 03/28/33 | 288 | 570 | P | 368 | 304 | 50% | 152 | |
| Levy Sampson | Cascade | 04/28/50 | 369 | 317 | 408 | 03/28/33 | 288 | 570 | A | 408 | 441 | 50% | 221 | |
| Lewis William | Cascade | 04/28/50 | 369 | 317 | 408 | 03/28/33 | 288 | 570 | P | 408 | 475 | 50% | 238 | |
| Long Daniel | McIntyre | 04/28/50 | 369 | 317 | 250 | 03/28/33 | 288 | 570 | | | | | | |
| Long Daniel | McNett | 04/28/50 | 369 | 317 | 158 | 03/28/33 | 288 | 570 | A | 408 | 411 | 50% | 206 | |
| Mifflin Jonathan | Cascade | 04/28/50 | 369 | 316 | 408 | 03/28/33 | 288 | 570 | A | 408 | 441 | 50% | 221 | |
| Miles James | McIntyre | 10/26/50 | 373 | 220 | 408 | 03/28/33 | 288 | 570 | A | 408 | 439 | 50% | 220 | |
| Miles Samuel Jr | McIntyre | 04/28/50 | 369 | 317 | 408 | 03/28/33 | 288 | 570 | A | 408 | 384 | 50% | 192 | |

Lycoming County Prothonotary Civil E-Filed - 13 Nov 2023 02:51:45 PM
Instrument                book Page
200900001934  OR     6561   154

| Warrantee Name Or Number | Township | Source Deed | | | Reservation Deed | | | | | Survyd Acres | % Own | IDC Net | Shal Lease |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Date of Deed | Recorded DB at Page | Acres | Date of Deed | Recorded DB at Page | All P/O | Acres | | | | | |
| Miller    Peter | Cascade | 04/28/50 | 369  316 | 413 | 03/28/33 | 288  570 | A | 414 | | 450 | 50% | 225 | |
| Morgan  Jacob | McIntyre | 04/28/50 | 369  317 | 408 | 03/28/33 | 288  570 | A | 408 | | 378 | 50% | 189 | |
| Perry   Rowland | Cascade | 04/28/50 | 369  317 | 408 | | | | | | | | | |
| Perry   Rowland | McIntyre | 04/28/50 | 369  316 | 408 | 03/28/33 | 288  570 | A | 408 | | 446 | 50% | 223 | |
| Potter   John | Plunketts Ck | Sullivan County tax sale | | 435 | 11/01/22 | 247  508 | A | 551 | | 551 | 100% | 551 | |
| Price   John | McIntyre | 04/28/50 | 369  317 | 408 | 03/28/33 | 288  570 | A | 408 | | 431 | 50% | 216 | |
| Ratazzira Robt/Jos | McNett | 04/28/50 | 369  317 | 408 | 03/28/33 | 288  570 | A | 408 | | 431 | 50% | 216 | |
| Rankin  Robert | Cascade | 04/28/50 | 369  317 | 100 | 03/28/33 | 288  570 | | | | | | | |
| Rankin  Robert | McNett | 04/28/50 | 369  317 | 301 | 03/28/33 | 288  570 | A | 408 | | 431 | 50% | 216 | |
| Rawle   William | Cascade | 04/28/50 | 369  317 | 408 | 03/28/33 | 288  570 | A | 408 | | 458 | 50% | 229 | |
| Reynok  James | Cascade | 04/28/50 | 369  317 | 408 | 03/28/33 | 288  570 | A | 408 | | 453 | 50% | 227 | |
| Reynok  James | McIntyre | 04/28/50 | 369  316 | 408 | | | | | | | | | |
| Reynok  Thomas | Cascade | 04/28/50 | 369  316 | 408 | 03/28/33 | 288  570 | A | 408 | | 408 | 50% | 204 | |
| Roberts  Algernon | McIntyre | 04/28/50 | 369  317 | 408 | 03/28/33 | 288  570 | A | 408 | | 377 | 50% | 189 | |
| Shaw    Robert | McIntyre | 04/28/50 | 369  317 | 408 | 03/28/33 | 288  570 | A | 408 | | 387 | 50% | 194 | |
| Shaw    William | McNett | 06/08/28 | 271  174 | 408 | 03/28/33 | 288  570 | A | 408 | | 450 | 50% | 225 | |
| Singer   Abraham | McIntyre | 10/26/50 | 373  220 | 408 | 03/28/33 | 288  570 | A | 408 | | 431 | 50% | 216 | |
| Singer   John | McIntyre | 04/28/50 | 369  316 | 248 | 03/28/33 | 288  570 | A | 248 | | 256 | 50% | 128 | |
| Smith   Benjamin | Cascade | 04/28/50 | 369  317 | 408 | 03/28/33 | 288  570 | A | 408 | | 439 | 50% | 220 | |
| Smith   John | McIntyre | 06/29/98 | 209  34 | 382 | 05/08/23 | 250  335 | A | 401 | | 402 | 100% | 402 | |
| Smith   Robert | McIntyre | 04/28/50 | 369  317 | 300 | 03/28/33 | 288  570 | | | | | | | |
| Smith   Robert | McNett | 04/28/50 | 369  317 | 108 | 03/28/33 | 288  570 | A | 408 | | 467 | 50% | 234 | |
| Stewart  Walter | McIntyre | 04/28/50 | 369  317 | 408 | 03/28/33 | 288  570 | A | 408 | | 431 | 50% | 216 | |
| Stewart  William | McIntyre | 04/28/50 | 369  317 | 408 | 03/28/33 | 288  570 | A | 408 | | 400 | 50% | 200 | |
| Supplee  Jonathan | Cascade | 04/28/50 | 369  317 | 413 | 03/28/33 | 288  570 | A | 413 | | 379 | 50% | 190 | |
| Thomas  Joseph | Cascade | 04/28/50 | 369  317 | 408 | 03/28/33 | 288  570 | A | 408 | | 436 | 50% | 218 | |
| Tilghman Edward | Cascade | 04/28/50 | 369  317 | 408 | 03/28/33 | 288  570 | A | 408 | | 443 | 50% | 222 | |
| Tudor   George | Cascade | 04/28/50 | 369  317 | 408 | 03/28/33 | 288  570 | A | 408 | | 448 | 50% | 224 | |

**Total Lycoming County**          42,312          28,447

Lycoming County Prothonotary Civil E-Filed - 13 Nov 2023 02:51:45 PM

# EXHIBIT D

Lycoming County Prothonotary Civil E-Filed - 13 Nov 2023 02:51:45 PM

Instrument          book Page
201000013697 OR     7065   43

## MEMORANDUM OF LEASE

THIS MEMORANDUM OF LEASE dated effective 1st day of December, 2006, between: International Development Corporation, a Colorado Corporation, whose mailing address for notice purposes is P.O. Box 9994, Washington D.C., 20016 (hereinafter called the "Lessor") OF THE FIRST PART

-and-

Southwestern Energy Production Company, an Arkansas Corporation, whose mailing address is 2350 North Sam Houston Parkway East, Suite 125, Houston, Texas 77032, (hereinafter call the "Lessee") OF THE SECOND PART

**WHEREAS:**

The Lessor and Lessee have entered into a RESTATEMENT AND AMENDMENT OF OIL AND GAS LEASE, and made effective December 1, 2006, for a primary term of Six (6) years from December 1, 2006. The RESTATEMENT AND AMENDMENT OF OIL AND GAS LEASE is subject to extension by the terms of the said RESTATEMENT AND AMENDMENT OF OIL AND GAS LEASE, on those premises described as all those certain tracts of land situate in the County of Lycoming, Commonwealth of Pennsylvania, and more particularly described in the attached Exhibit "A"; as defined in The RESTATEMENT AND AMENDMENT OF OIL AND GAS LEASE, the lease may be extended beyond the primary term for an additional five (5) years until December 31, 2017.

**NOW THEREFORE:** In consideration of the mutual covenants and agreements contained in this agreement, the Lessor and the Lessee agree as follow:

1. This Memorandum of Lease has been executed for the purpose of indicating the existence of the aforesaid Restatement and Amendment of Oil and Gas Lease and shall not be considered in any way a modification or alteration of the Lease Agreement.

2. The Lease further provides that the lease continues beyond its primary term for so long thereafter as the leased substances are produced from the said lands or any portion thereof is pooled, unitized or consolidated with other lands in accordance with the lease terms.

**IN WITNESS WHEREOF,** Lessor hereunto sets hand and seal on the date aforesaid.

LESSOR:

INTERNATIONAL DEVELOPMENT CORPORATION

By: _____
Charles David Rainey
President

LESSEE:

SOUTHWESTERN ENERGY PRODUCTION COMPANY

By: _____          ban
Jim R. Dewbre
Sr. VP of Land and Business Development

201000013697
Filed for Record in
LYCOMING COUNTY PA
ANNABEL MILLER
09-28-2010 At 02:44 pm.
LESS 30 YR        18.50
OR   book 7065 Page  43 -   46

FILED
2010 SEP 28   P 2:49
ANNABEL MILLER
RECORDER OF DEEDS

Lycoming County Prothonotary Civil E-Filed - 13 Nov 2023 02:51:45 PM

Instrument        Book Page
201000013697 OR    7065   44

## ACKNOWLEDGEMENTS

STATE OF _Maryland_ )
COUNTY OF _St. Mary's_ )

On this, the 14th day of _September 2010_, before me, the undersigned officer, personally appeared Charles David Rathey, who acknowledged himself to be the President of International Development Corporation, and that the foregoing instrument was executed on behalf of said corporation by authority of its Board of Directors, and said appearer acknowledged said instrument to be the free act and deed of said corporation.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_____
Notary Public

My commission expires: _My Commission Expires 5/18/2014_

STATE OF TEXAS )
)
COUNTY OF HARRIS )

On this 23rd day of _August_, 2010, before me personally appeared _Jim R. Dewbre_ to me personally know who, being by me duly sworn, did say that he is the _Sr. V.P. - Land_ for SOUTHWESTERN ENERGY PRODUCTION COMPANY, and that the foregoing instrument was executed on behalf of said corporation by authority of its Board of Directors, and said appearer acknowledged said instrument to be the free act and deed of said corporation.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_____
Notary Public

My commission expires: _____

> KRISTA M. PAUL
> Notary Public, State of Texas
> My Commission Expires
> April 16, 2012

* The term "person" means any corporation, joint stock company, estate, general partnership (including any registered limited liability partnership or foreign limited liability partnership), limited liability company (including professional service limited liability company), foreign limited liability company (including a foreign professional service limited liability company), joint venture, limited partnership, natural person, attorney in fact, real estate investment trust, business trust or other trust, custodian, nominee or any other individual entity in its own or any representative capacity.

**This document prepared by:** Southwestern Energy Production Company, 2350 North Sam Houston Parkway East, Suite 125, Houston, TX 77032.
**When Recorded Return to:** Southwestern Energy Production Company, 2350 North Sam Houston Parkway East, Suite 125, Houston, TX 77032.

Acknowledgment Page to Memorandum of Oil and Gas lease dated effective 1st Day of December, 2006 between International Development Corporation and Southwestern Energy Production Company.

Page 2 of 2

Lycoming County Prothonotary Civil E-Filed - 13 Nov 2023 02:51:45 PM
Instrument          book Page
201600013097 OR   7865   45

## Exhibit "A"

| Warrant | Township | Gross Acres | Net Acres |
|---|---|---|---|
| 1613 | Jackson | 108 | 94.5 |
| 1615 | Jackson | 234 | 204.75 |
| 1620 | Cogan House/Pine | 854 | 747.25 |
| 1621 | Cogan House | 227 | 227 |
| 1622 | Cogan House | 1082 | 946.75 |
| 1623 | Cogan House | 112 | 56 |
| 1626 | Cogan House | 1048 | 917 |
| 4383-James Wilson | Brown | 11 | 11 |
| 5663 | Jackson/McIntyre | 901 | 901 |
| 5665 | Cogan House/Lewis | 949 | 830 |
| 5667 | Lewis | 1097 | 960 |
| William Barker | Lewis | 126 | 110.25 |
| Henry Beck | Plunketts Creek | 159 | 151 |
| John Dunlap | McIntyre | 51 | 25.5 |
| Michael Gratz | McNett | 448 | 224 |
| Jonathan Mifflin | Cascade | 441 | 220.5 |
| 5652 | McIntyre | 1098 | 549 |
| 5660 | McIntyre | 1215 | 607.5 |
| 5661 | Lewis | 930 | 465 |
| Thomas Afflick | Cascade | 408 | 204 |
| George Barclay | Cascade/McIntyre | 462 | 231 |
| William Barton | McNett | 428 | 214 |
| James Bayard | McIntyre | 430 | 215 |
| John Bayard | McNett | 202 | 101 |
| Steven Bayard | McNett | 431 | 215.5 |
| Clement Biddle | Cascade | 443 | 222 |
| David Caldwell | Cascade | 408 | 204 |
| William Chancellor | McIntyre | 313 | 156.5 |
| Ed Cutbush | Cascade | 408 | 204 |
| Samuel Dale | Cascade/McNett | 441 | 221 |
| Joseph Delaney | Cascade/McNett | 479 | 240 |
| Joseph Fox | Cascade | 407 | 203.5 |
| Tench Francis | Cascade | 408 | 204 |
| Mary Garrity | Cascade | 432 | 216 |
| David George | Cascade/McNett | 413 | 206.5 |
| Edward George | Cascade | 416 | 208 |
| Thomas George | McIntyre/Cascade | 439 | 220 |
| Michael Gratz | McIntyre | 522 | 261 |
| William Gray | McNett | 408 | 204 |
| Josiah Harmer | Cascade | 423 | 211.5 |
| John Hawkins | Cascade | 485 | 242.5 |
| Michael Hillegas | McNett/Cascade | 409 | 204.5 |
| James Hutchinson | Lewis | 494 | 247 |

Lycoming County Prothonotary Civil E-Filed - 13 Nov 2023 02:51:45 PM
Instrument        book Page
201000013677 OR   7005   46

| Name | Location | | |
|---|---|---|---|
| William Hutchinson | McNett | 458 | 229 |
| William James | Gamble | 450 | 225 |
| William Jones | McNett | 431 | 215.5 |
| Hugh Lennox | McNett | 175 | 88 |
| Aaron Levy | McIntyre | 304 | 152 |
| Sampson Levy | Cascade | 441 | 220.5 |
| William Lewis | Cascade | 475 | 237.5 |
| Daniel Long | McIntyre/McNett | 411 | 205.5 |
| James Miles | McIntyre | 439 | 219.5 |
| Samuel Miles Jr. | McIntyre | 384 | 192 |
| Peter Miller | Cascade | 450 | 225 |
| Jacob Morgan | McIntyre | 378 | 189 |
| Rowland Perry | Cascade | 446 | 223 |
| John Price | McIntyre | 431 | 215.5 |
| Joseph Rakestraw | McNett | 431 | 215.5 |
| Robert Rankin | Cascade/McNett | 431 | 215.5 |
| William Rawle | Cascade | 458 | 229 |
| James Reynolds | Cascade | 453 | 226.5 |
| Thomas Reynolds | Cascade | 408 | 204 |
| Algernon Roberts | McIntyre | 377 | 188.5 |
| Robert Shaw | McIntyre | 387 | 193.5 |
| William Shaw | McNett | 450 | 225 |
| Abraham Singer | McIntyre | 431 | 215.5 |
| John Singer | McIntyre | 256 | 128 |
| Benjamin Smith | Cascade | 439 | 219.5 |
| Robert Smith | McIntyre/McNett | 467 | 233.5 |
| Walter Stewart | McIntyre | 431 | 215.5 |
| William Stewart | McIntyre | 400 | 200 |
| Jonathan Supplee | Cascade | 379 | 189.5 |
| Joseph Thomas | Cascade | 436 | 218 |
| Edward Tilgham | Cascade | 443 | 221.5 |
| George Tudor | Cascade | 448 | 224 |
| 1602 | Pine | 950 | 831 |
| 1605 | Pine | 817 | 715 |
| 4788 | Jackson | 1,127 | 1,127 |
| 4789 | Jackson | 730 | 730 |
| 5753 | Lewis | 717 | 627 |
| John Potter | Plunketts Creek | 551 | 551 |
| William Harrison | Plunketts Creek | 518 | 518 |
| John Smith | McIntyre | 402 | 402 |
| Robert Straub | Lewis | 31 | 27 |
| 5651 | McIntyre | 80 | 40 |
| 5658 | McIntyre | 202 | 202 |
| TOTAL | | 40,523 | 25674 |

Lycoming County Prothonotary Civil E-Filed - 13 Nov 2023 02:51:45 PM

## RESTATEMENT AND AMENDMENT OF OIL AND GAS LEASE

THIS RESTATEMENT AND AMENDMENT OF OIL AND GAS LEASE, ("Restatement"), executed effective December 1, 2006, is by and between International Development Corporation, a Colorado corporation, whose mailing address for notice purposes is P.O. Box 9994, Washington D.C., 20016 (referred to herein as "Lessor"), and Southwestern Energy Production Company, an Arkansas Corporation, whose mailing address for notice purposes is 2350 North Sam Houston Parkway East, Suite 125, Houston, Texas 77032, as successor to the interest of the Lessee in that certain December 1, 2006 Oil and Gas Lease granted by the Lessor herein in favor of Virginia Energy Consultants, LLC, as lessee therein (referred to hereinafter as "Lessee").

RECITALS:

Whereas, Lessor and Virginia Energy Consultants, LLC, as lessee, entered into an Oil and Gas Lease dated December 1, 2006 (the "Lease"), which a Memorandum thereof is recorded in Book 6197, at Page 327 of the records in the office of the Recorder of Deeds, Lycoming County, Pennsylvania;

Whereas, Lessor and Virginia Energy Consultants, LLC ("VEC"), as lessee, entered into an Amendment and Restatement of Oil and Gas Lease dated February 13th, 2009, but effective December 1, 2006, amending the terms of the Lease (referred to herein as the "First Amendment"), such Amendment and Restatement of Oil and Gas Lease being recorded in Book 6561, Page 155 of the aforesaid records;

Whereas, Lessor and Quest Eastern Resource, LLC ("Quest"), as successor lessee by assignment from VEC, entered into an Amendment to Oil and Gas Lease dated February 12, 2009, but effective December 1, 2006, amending the terms of the Lease and the First Amendment (referred to herein as the "Second Amendment"), such Second Amendment being recorded in Book 6561, at Page 147 of the aforesaid records;

Whereas, Quest, as successor Lessee by merger to the interest of PetroEdge Resources, LLC, assigned all of its right, title and interest in and to the Lease unto the Lessee herein effective February 1, 2009, such assignment being recorded in Book 6567, at Page 307 of the aforesaid records;

Whereas, the parties hereto wish to Restate the terms and provisions of the Lease, the First Amendment and the Second Amendment in order to memorialize the cumulative intent of the Lessor and all prior lessees by combining the terms thereof into this one document; and

Whereas, this document is intended as a memorandum designed to combine and restate the terms and provisions as set forth and amended in the Lease, First Amendment and Second Amendment by and between International Development Corporation and Virginia Energy Consultants, LLC and all successor Lessees to VEC. The Lessor and the Lessee herein hereby amend the Lease. In the event there are provisions in aforesaid documents which conflict with this Restatement, the provisions in this document shall control and shall reflect the true intent of the parties herein.

**1. Grant of Leased Premises.** In consideration of one ($1.00) dollar in hand paid and the covenants herein contained, Lessor hereby grants, leases and lets exclusively to Lessee the following described land, hereinafter called leased premises (SEE ATTACHED EXHIBIT "A" AND MADE A PART HEREOF FOR A COMPLETE DESCRIPTION OF THE LEASEHOLD)

for the purpose of exploring for, developing, producing and marketing oil and gas, along with all hydrocarbon and nonhydrocarbon substances produced in association therewith (collectively, the "Oil and Gas Substances"). The term "gas" as used herein includes helium, carbon dioxide, gaseous sulfur compounds, and other commercial gases, as well as normal hydrocarbon gases. In addition to the above-described land, this lease and the term "leased premises" also covers accretions and any small strips or parcels of land now or hereafter owned by Lessor which are contiguous or adjacent to the above-described land, and, in consideration of the aforementioned cash bonus, Lessor agrees to execute at Lessee's request any additional or supplemental instruments for a more complete or accurate description of the land so covered. For the purpose of determining the amount of any payments based on acreage hereunder, the number of gross acres above specified shall be deemed correct, whether actually more or less.

The rights granted to Lessee hereunder shall include the right of ingress and egress on the leased premises or lands pooled or unitized therewith, along with such rights as may be reasonably necessary to conduct operations for exploring, developing, producing, storing and marketing Oil and Gas Substances, including, but not limited to, geophysical operations, the drilling of wells, and the construction and use of roads, pipelines, tanks, water wells, disposal wells, injection wells, pits, electric and telephone lines, fiber optics and other communications facilities, power stations, and other facilities deemed necessary by Lessee to explore, discover, produce, store, (including storage in subsurface strata), treat and/or transport Oil and Gas Substances and water produced from the leased premises or other lands that share central facilities and are jointly operated with the leased premises for gathering, treating, compression and water disposal. Lessee may use in such operations, free of cost, any oil, gas, water and/or other substances produced from the leased premises, except water from Lessor's wells or ponds. In exploring, developing, producing or marketing from the leased premises or lands pooled or unitized therewith, the rights granted herein shall apply (a) to the entire leased premises, notwithstanding any partial release or other partial termination of this lease; and (b) to any other lands in which Lessor now or hereafter has authority to grant such rights in the vicinity of the leased premises or lands pooled or unitized therewith. When requested by Lessor in writing, Lessee shall bury its pipelines below ordinary plow depth on cultivated lands. No well shall be located less than 200 feet from any house or barn now on the leased premises or other lands of Lessor used by Lessee hereunder, without Lessor's consent, and Lessee shall pay for damage caused by its operations to buildings and other improvements now on the leased premises or such other lands, and to commercial timber and growing crops thereon. Lessee shall have the right at any time to remove its fixtures, equipment and materials, including well casing, from the leased premises or such other lands during the term of this lease or within a reasonable time thereafter.

**2. Term of Lease.** This lease shall be in force for a primary term of **Six (6)** years from the date hereof, and for as long thereafter as oil or gas or other substances covered hereby are produced in paying quantities from the leased premises or from lands pooled or unitized therewith or this lease is otherwise maintained in effect pursuant to the provisions hereof.

Lycoming County Prothonotary Civil E-Filed - 13 Nov 2023 02:51:45 PM

This lease is a "Paid-Up Oil and Gas Lease", all rental payments having been paid in advance. No rental payments are necessary in order to maintain this lease in full force and effect during the primary term.

**3. Royalty Payment.** For all Oil and Gas Substances that are produced and sold from the leased premises, Lessor shall receive as its royalty one eighth (1/8th) of the sales proceeds actually received by Lessee from the sale of such production, less this same percentage share of all severance and ad valorem taxes, free and clear of all Post Production Costs. As used in this provision, Post Production Costs shall mean (i) all losses of produced volumes (whether by use as fuel, line loss, flaring, venting or otherwise) and (ii) all costs actually incurred by Lessee from and after the wellhead to the point of sale, including, without limitation, all gathering, dehydration, compression, treatment, processing, marketing and transportation costs incurred in connection with the sale of such production. For royalty calculation purposes, Lessee shall never be required to adjust the sales proceeds to account for the purchaser's costs or charges downstream of the point of sale.

If Lessee uses the Oil and Gas Substances (other than as fuel in connection with the production and sale thereof) in lieu of receiving sale proceeds, the price to be used under this provision shall be based upon arm's-length sale(s) to unaffiliated parties for the applicable month that are obtainable, comparable in terms of quality and quantity, and in closest proximity to the leased premises. Such comparable arm's-length sales price shall be less any Post Production Costs applicable to the specific arms-length transaction that is utilized.

**4. Shut-in Royalty.** If after the primary term one or more wells on the leased premises, or lands pooled or unitized therewith are capable of producing Oil and Gas Substances in paying quantities, but such well or wells are either shut in or production therefrom is not being sold by Lessee, such well or wells shall nevertheless be deemed to be producing in paying quantities for the purpose of maintaining this lease. If for a period of 90 consecutive days such well or wells are shut in or production therefrom is not sold by Lessee, then Lessee shall pay an aggregate shut-in royalty of Ten ($10.00) dollars per acre then covered by this lease. The payment shall be made to Lessor on or before the first anniversary date of the lease following the end of the 90-day period and thereafter on or before each anniversary while the well or wells are shut in or production therefrom is not being sold by Lessee; provided that if this lease is otherwise being maintained by operations under this lease, or if production is being sold by Lessee from another well or wells on the leased premises or lands pooled or unitized therewith, no shut-in royalty shall be due until the first anniversary date of the lease following the end of the 90-day period next following the cessation of such operations or production, as the case may be. Lessee's failure to properly pay shut-in royalty shall render Lessee liable for the amount due, but shall not operate to terminate this lease.

**5. Operations.** If Lessee drills a well on the leased premises, or lands pooled or unitized therewith, that is incapable of producing in paying quantities (hereinafter called "dry hole"), or if all production (whether or not in paying quantities) permanently ceases from any cause, including a revision of unit boundaries pursuant to the provisions of this lease or the action of any governmental authority, then in the event this lease is not otherwise being maintained in force it shall nevertheless remain in force if Lessee commences further operations for reworking an existing well or for drilling an additional well or for otherwise obtaining or restoring production on the leased premises or lands pooled or unitized therewith within 90 days after completion of operations on such dry hole or within 90 days after such cessation of all production. If after the primary term this lease is not otherwise being maintained in force, but Lessee is then engaged in Operations, as defined below, this lease shall remain in force so long as any one or more of such Operations are prosecuted with no interruption of more than 90 consecutive days, and if any such Operations result in the production of Oil and Gas Substances, as long thereafter as there is production in paying quantities from the leased premises or lands pooled or unitized therewith. As used herein, the term Operations shall mean any activity conducted on or off the leased premises that is reasonably calculated to obtain or restore production, including without limitation, (i) drilling or any act preparatory to drilling (such as obtaining permits, surveying a drill site, staking a drill site, building roads, clearing a drill site, or hauling equipment or supplies); (ii) reworking, plugging back, deepening, treating, stimulating, refitting, installing any artificial lift or production-enhancement equipment or technique; (iii) constructing facilities related to the production, treatment, transportation and marketing of substances produced from the lease premises; and (iv) construction of water disposal facilities and the physical movement of water produced from the leased premises.

**6. Drilling Obligations.**

(A)   On or before December 31, 2010, Lessee shall drill not less than two (2) Commitment Wells penetrating the Marcellus Shale Formation from a location(s) situated on that portion of the Leasehold identified on Exhibit "A" attached hereto.  A Commitment Well is defined as a horizontal well drilled to penetrate the Marcellus Shale formation with a minimum lateral leg of 3,000 feet within said formation, excluding mechanical failure and/or unforeseen drilling difficulties that would preclude Lessee from completing the well in a timely and cost effective manner; said well shall be cased but not fracture stimulated until such time as Lessee deems operationally prudent.

(B)   Lessee shall drill not less than two (2) Commitment Wells (as described in 6.(A) ) penetrating the Marcellus Shale Formation each subsequent calendar year thereafter.

(C)   If during a given calendar year defined as Jan. 1 – Dec 31, Lessee does not meet its contractual commitment to drill two Commitment Wells per calendar year as described herein, an estimate of Advance Royalties shall be calculated and paid to the Lessor. This clause and its attendant calculations shall also apply to any ORRI holder. The Advance Royalty paid to the Lessor shall be calculated per well and paid to the Lessor as follows: The one time payment of the estimated Advance Royalty payment is based upon an initial production rate of 1.5 MMCFPD per well multiplied by 360 days of production multiplied by the average NYMEX cost per MCF for the calendar year multiplied by 12.5% royalty and applicable ORRI. Each Advance Royalty payment required to be paid hereunder shall be due on or before the expiration of the calendar year in which the required Commitment Well was not drilled.  An Advance Royalty payment shall act to satisfy or partially satisfy Lessor's obligation to drill not less than two (2) Commitment Wells in each calendar year.  However, no Advance Royalty payment shall act to satisfy or partially satisfy Lessee's obligation to drill an aggregate of fourteen (14) Commitment Wells, as is more specifically set forth and described in sub-paragraph G of this Section 6.

(D)   Lessee shall recoup its Advance Royalty from Future Royalty Payments to lessee by the following formula. Upon Lessor achieving first gas sales, Lessee shall pay Lessor and ORRI holder 75% of the Royalty or ORRI prescribed by lease. Lessee shall continue to pay Lessor at this rate until such date that

2

Lycoming County Prothonotary Civil E-Filed - 13 Nov 2023 02:51:45 PM

Lessee recoups the Royalties Advanced to Lessor in exchange for commitment wells that were not drilled as prescribed herein. Payments shall be made on a monthly basis until such time as Lessee recoups the full amount of the Advance Royalty payment. Notwithstanding any provision to the foregoing, Lessee must have otherwise fulfilled its obligation to drill two (2) Commitment Wells in the then-current calendar year , and all Commitment Wells not drilled in previous years, before Lessee may elect to recoup a prior Advance Royalty payment from production of a new well. All of Lessor's rights to recoup Advance Royalty payments hereunder shall cease automatically upon Lessee's failure to satisfy the aggregate drilling obligations set forth in sub-paragraph B of this Section 6.

(E)     If Lessee fulfills its obligations as described herein, Lessee shall have the right but not the obligation to drill additional wells on the Leasehold acreage for so long as Lessee drills two (2) wells, as defined by 6.(A) on the Leasehold acreage per twelve (12) consecutive calendar month period.

(F)     Lessee shall have the right to carry forward and credit to future drilling obligations for subsequent twelve (12) consecutive month periods any well(s) drilled on the Leasehold acreage during a current twelve (12) consecutive month period in excess of the two (2) well obligations for such twelve (12) consecutive month calendar period.

(G)     Notwithstanding anything to the contrary in this Section, in the event Lessee drills fourteen (14) wells on the Leasehold, Lessee shall be entitled to retain the entirety of the Leasehold with no further obligation to drill on undeveloped acreage thereof pursuant to this Section.

(H)     This lease shall be held in perpetuity for so long as Lessee either drills two horizontal Marcellus wells, as defined by 6.(A) per calendar year beginning in 2010 or an estimate of advance royalties payment is made or so long as the lease is held by production from the Marcellus Formation.  In the event Lessee fails to drill fourteen (14) horizontal Marcellus wells, as defined in Section 6(A) by December 31, 2017, Lessee shall release to Lessor, all acreage lying outside any earned units pursuant to and defined by the formula in the Pooling Clause in Section 7.

(I)     One well shall be drilled to the Ordovician Trenton Black River during the Primary Term of this lease.  If Lessee chooses not to test the Ordovician Trenton Black River, all rights to deep rights (defined as all zones below the Devonian Helderberg Formation) shall revert back to IDC. In addition, should Lessee decline to drill this well, and a 3-D seismic survey is shot, Lessee agrees to allow Lessor access to the data under the following conditions:

a. All access to the data by Lessor, its respective devisees, legatees, successors and/or assigns, agents or affiliates shall be subject to and limited by the terms of any and all agreements or licenses inherent in the acquisition of said data which bind Lessee.

b. Subject to the terms and limitations of any agreement or license, Lessee agrees to allow Lessor, its respective devisees, legatees, successors and/or assigns, agents or affiliates, to a one time review of the data for a period of up to five (5) days at a location agreed upon by the parties. Said review shall consist of interpretations only and shall not involve any removal or reproduction of data.

7. Pooling. Lessee shall have the right, but not the obligation, to pool all or any part of the leased premises or any interest therein with any other lands or interests, as to any or all depths or zones, and as to any or all substances covered by this lease, either before or after the commencement of drilling or production, whenever Lessee deems it necessary or proper to do so in order to prudently develop or operate the leased premises, whether or not similar pooling authority exists with respect to such other lands or interests. The creation of a unit by such pooling shall be based on the following criteria (hereinafter called "pooling criteria"): A unit for an oil well (other than a horizontal completion) shall not exceed 40 acres plus a maximum acreage tolerance of 10%. If Lessee has drilled a horizontal gas well to the target depth identified by Lessee, the unit acreage for such horizontal well shall be the sum of: (A) 640 acres, and (B) the product of: (I) 0.30 and (II) the total horizontal run of the wellbore of such directional well as measured, beginning from where the well bore-hole intersects with the top of the Marcellus shall add 0.30 acres to the 640 acres. By way of example, a horizontal well with a 2000 foot lateral in the Marcellus formation would add 600 acres for a total of 1,240 acres. (0.30 x 2000 = 600 acres). In exercising its pooling rights hereunder, Lessee shall file of record at the County Recorder's Office a written declaration describing the unit and stating the effective date of pooling. Production, drilling or reworking operations anywhere on a unit which includes all or any part of the leased premises shall be treated as if it were production, drilling or reworking operations on the leased premises, except that the production on which Lessor's royalty is calculated shall be that proportion of the total unit production which the net acreage covered by this lease and included in the unit bears to the total acreage in the unit, but only to the extent such proportion of unit production is sold by Lessee. In the event a unit is formed hereunder before the unit well is drilled and completed, so that the applicable pooling criteria are not yet known, the unit shall be based on the pooling criteria Lessee expects in good faith to apply upon completion of the well; provided that within a reasonable time after completion of the well, the unit shall be revised if necessary to conform to the pooling criteria that actually exist. Pooling in one or more instances shall not exhaust Lessee's pooling rights hereunder, and Lessee shall have the recurring right, but not the obligation, to revise any unit formed hereunder by expansion or contraction or both, either before or after commencement of production, in order to conform to the well spacing or density pattern prescribed or permitted by the governmental authority having jurisdiction, or to conform to any productive acreage determination made by such governmental authority. To revise a unit hereunder, Lessee shall file of record at the County Recorder's Office a written declaration describing the revised unit and stating the effective date of revision. To the extent any portion of the leased premises is included in or excluded from the unit by virtue of such revision, the proportion of unit production on which royalties are payable hereunder shall thereafter be adjusted accordingly.

8. Unitization. Lessee shall have the right, but not the obligation, to commit all or any part of the leased premises or any interest therein to one or more unit plans or agreements for the cooperative development or operation of one or more oil and/or gas reservoirs or portions thereof, if in lessee's judgment such plan or agreement will prevent waste and protect correlative rights, and if such plan or agreement is approved by the federal, commonwealth or local governmental authority having jurisdiction. When such a commitment is made, this lease shall be subject to the terms and conditions of the unit plan or agreement, including any formula prescribed therein for the allocation of production from a unit. Upon permanent cessation thereof, Lessee may terminate the unit by filing of record at the County Recorder's Office a written declaration describing the unit and stating the date of termination. Pooling hereunder shall not constitute a cross-

3

Lycoming County Prothonotary Civil E-Filed - 13 Nov 2023 02:51:45 PM

conveyance of interests.

**9. Payment Reductions.** If Lessor owns less than the full Oil and Gas/Mineral estate in all or any part of the leased premises, payment of royalties and shut-in royalties hereunder shall be reduced as follows: royalties and shut-in royalties for any well on any part of the leased premises or lands pooled therewith shall be reduced to the proportion that Lessor's interest in such part of the leased premises bears to the full Oil and Gas/Mineral estate in such part of the leased premises. To the extent any royalty or other payment attributable to the Oil and Gas/Mineral estate covered by this lease is payable to someone other than Lessor, such royalty or other payment shall be deducted from the corresponding amount otherwise payable to Lessor hereunder.

**10. Ownership Changes.** The interest of either Lessor or Lessee hereunder may be assigned, devised or otherwise transferred in whole or in part, by area and/or by depth or zone, and the rights and obligations of the parties hereunder shall extend to their respective heirs, devisees, executors, administrators, successors and assigns. No change in Lessor's ownership shall have the effect of reducing the rights or enlarging the obligations of Lessee hereunder, and no change in ownership shall be binding on Lessee until 60 days after Lessee has been furnished the original or duly authenticated copies of the recorded documents establishing such change of ownership to the satisfaction of Lessee or until Lessor has satisfied-the notification requirements contained in Lessee's usual form of division order. In the event of the death of any person entitled to shut-in royalties hereunder, Lessee may pay or tender such shut-in royalties to the credit of decedent or decedent's estate. If at any time two or more persons are entitled to shut-in royalties hereunder, Lessee may pay or tender such shut-in royalties to such persons either jointly or separately in proportion to the interest which each owns. If Lessee transfers its interest hereunder, in whole or in part, Lessee shall be relieved of all obligations thereafter arising with respect to the transferred interest, and failure of the transferee to satisfy such obligations with respect to the transferred interest shall not affect the rights of Lessee with respect to any interest not so transferred. If Lessee transfers a full or undivided interest in all or any portion of the area covered by this lease, the obligation to pay or tender shut-in royalties hereunder shall be divided between Lessee and the transferee in proportion to the net acreage interest in this lease then held by each.

**11. Release of Lease.** Lessee may, at any time and from time to time, deliver to Lessor or file of record at the County Recorder's Office a written release of this lease as to a full or undivided interest in all or any portion of the area covered by this lease or any depths or zones thereunder, and shall thereupon be relieved of all obligations thereafter arising with respect to the interest so released. If Lessee releases less than all of the interest or area covered hereby, Lessee's obligation to pay or tender shut-in royalties shall be proportionately reduced in accordance with the net acreage interest retained hereunder.

**12. Regulation and Delay.** Lessee's obligations under this lease, whether express or implied, shall be subject to all applicable laws, rules, regulations and orders of any governmental authority having jurisdiction, including restrictions on the drilling and production of wells, and regulation of the price or transportation of oil, gas and other substances covered hereby. When drilling, reworking, production or other operations are prevented or delayed by such laws, rules, regulations or orders, or by inability to obtain necessary permits, equipment, services, material, water, electricity, fuel, access or easements, or by fire, flood, adverse weather conditions, war, sabotage, rebellion, insurrection, riot, strike or labor disputes, or by inability to obtain a satisfactory market for production or failure of purchasers or carriers to take or transport such production, or by any other cause not reasonably within Lessee's control, this lease shall not terminate because of such prevention or delay, and, at Lessee's option, the period of such prevention or delay shall be added to the term hereof. Lessee shall not be liable for breach of any provisions or implied covenants of this lease when drilling, production or other operations are so prevented or delayed.

**13. Breach or Default.** No litigation shall be initiated by Lessor for damages, forfeiture or cancellation with respect to any breach or default by Lessee hereunder, for a period of at least 90 days after Lessor has given Lessee written notice fully describing the breach or default, and then only if Lessee fails to remedy the breach or default within such period. In the event the matter is litigated and there is a final judicial determination that a breach or default has occurred, this lease shall not be forfeited or cancelled, in whole or in part, unless Lessee is given a reasonable time after said judicial determination to remedy the breach or default and Lessee fails to do so.

**14. Title.** Lessee hereby agrees to accept as is title to the leased premises conveyed to Lessee hereunder. Lessor also agrees that Lessee may, at Lessee's option, pay and discharge any taxes, mortgages or liens existing, levied or assessed on or against the leased premises. If Lessee exercises such option, Lessee shall be subrogated to the rights of the party to whom payment is made, and, in addition to its other rights, may reimburse itself out of any royalties or shut-in royalties otherwise payable to Lessor hereunder. In the event Lessee is made aware of any claim inconsistent with Lessor's title, Lessee may suspend the payment of royalties and shut-in royalties hereunder, without interest, until Lessee has been furnished satisfactory evidence that such claim has been resolved.

**15. Indemnity.** Lessee will indemnify and hold Lessor, harmless from any and all claims, demands, suits, losses, damages, and costs (including, without limitation, any attorney fees) incurred by the Lessor which may be asserted against the Lessor by reason of or which may arise out of or which may be related to Lessee's activities on the leased premises.

**16. Extension of Primary Term.** This lease shall be held in perpetuity for so long as Lessee either drills two horizontal Marcellus wells per calendar year beginning in 2010 or an estimate of advance royalties payment is made or so long as the lease is held by production. Any drilling obligations stated in this Lease terminate once the Leasehold has been developed per the terms of Section 6, Sub-Section G.

**17. Oil and Gas Right Ownership Shared by IDC and Anadarko.** Lessee agrees to actively and diligently pursue an Operating Agreement for the development of the Marcellus Shale between Lessee and Anadarko on shared Oil and Gas Right ownership acreage identified in Exhibit A. If at the end of the Primary Term of this lease no agreement has been reached between Lessee and Anadarko, and the drilling obligations outlined in Section 6 have been satisfied by Lessee, Lessor will allow Lessee to pursue a partition action.

IN WITNESS WHEREOF, this lease is executed to be effective as of the date first written above, but upon execution shall be binding on the signatory and the signatory's heirs, devisees, executors, administrators, successors and assigns, whether or not this lease has been executed by all parties hereinabove named as Lessor.

Lycoming County Prothonotary Civil E-Filed - 13 Nov 2023 02:51:45 PM

WITNESSES AND/OR ATTESTATIONS:                    **LESSOR (WHETHER ONE OR MORE)**

IN WITNESS WHEREOF, this RESTATEMENT AND AMENDMENT OF OIL AND GAS LEASE is executed by the parties on the date of the each party's respective acknowledgement as of the effective date hereof.

LESSOR:

INTERNATIONAL DEVELOPMENT CORPORATION

By: _____
　　　Charles David Rainey
　　　President

SOUTHWESTERN ENERGY PRODUCTION COMPANY

By: _____
　　　Jim R. Dewbre
　　　Sr. VP Land

## ACKNOWLEDGMENT

State of　　　Maryland
County of　　St. Marys

On this the 21st day of October, 2009 before me a Notary Public, the undersigned officer, personally appeared Charles David Rainey to me personally known who, being by me duly sworn, did say that he is the President for International Development Corporation, and that the foregoing instrument was executed on behalf of said corporation by authority of its Board of Directors, and said appearer acknowledged said instrument to be the free act and deed of said corporation.

SEAL　　┌─────────────────────────┐
　　　　　│ DANIEL MCCLANAHAN       │　　Notary Public: _Daniel McClan___
　　　　　│ NOTARY PUBLIC           │
　　　　　│ CHARLES COUNTY          │　　My commission expires: _12/4/2011_
　　　　　│ MARYLAND                │
　　　　　│ MY COMMISSION EXPIRES DEC 4, 2013 │
　　　　　└─────────────────────────┘

STATE OF TEXAS

COUNTY OF HARRIS

On this the 26 day of October, 2009, before me personally appeared Jim R. Dewbre to me personally known who, being by me duly sworn, did say that he is the Sr. VP - Land for SOUTHWESTERN ENERGY PRODUCTION COMPANY, and that the foregoing instrument was executed on behalf of said corporation by authority of its Board of Directors, and said appearer acknowledged said instrument to be the free act and deed of said corporation.

(SEAL)　　　　　　　　　　　　Notary Public: _____

　　　　　　　　　　　　　　　　My commission expires: _4-16-13_

## RECORDING INFORMATION

COMMONWEALTH OF PENNSYLVANIA　　　　)
　　　　　　　　　　　　　　　　　　　　)
SS. County of _____　)

This instrument was filed for record on the _____ day of _____, 20 ___, at ____ o'clock M., and duly recorded

in Book _____, Page _____, of the _____ records of this office.

　　　　　　　　　　　　　　　　By_____
　　　　　　　　　　　　　　　　　　　Clerk (or Deputy)

Lycoming County Prothonotary Civil E-Filed - 13 Nov 2023 02:51:45 PM

## Exhibit "A"

| Warrant | Township | Gross Acres | Net Acres |
|---|---|---|---|
| 1613 | Jackson | 108 | 94.5 |
| 1615 | Jackson | 234 | 204.75 |
| 1620 | Cogan House/Pine | 854 | 747.25 |
| 1621 | Cogan House | 227 | 227 |
| 1622 | Cogan House | 1082 | 946.75 |
| 1623 | Cogan House | 112 | 56 |
| 1626 | Cogan House | 1048 | 917 |
| 4383-James Wilson | Brown | 11 | 11 |
| 5653 | Jackson/McIntyre | 901 | 901 |
| 5665 | Cogan House/Lewis | 949 | 830 |
| 5667 | Lewis | 1097 | 960 |
| William Barker | Lewis | 126 | 110.25 |
| Henry Beck | Plunketts Creek | 159 | 151 |
| John Dunlap | McIntyre | 51 | 25.5 |
| Michael Gratz | McNett | 448 | 224 |
| Jonathan Mifflin | Cascade | 441 | 220.5 |
| 5652 | McIntyre | 1098 | 549 |
| 5660 | McIntyre | 1215 | 607.5 |
| 5661 | Lewis | 930 | 465 |
| Thomas Afflick | Cascade | 408 | 204 |
| George Barclay | Cascade/McIntyre | 462 | 231 |
| William Barton | McNett | 428 | 214 |
| James Bayard | McIntyre | 430 | 215 |
| John Bayard | McNett | 202 | 101 |
| Steven Bayard | McNett | 431 | 215.5 |
| Clement Biddle | Cascade | 443 | 222 |
| David Caldwell | Cascade | 408 | 204 |
| William Chancellor | McIntyre | 313 | 156.5 |
| Ed Cutbush | Cascade | 408 | 204 |
| Samuel Dale | Cascade/McNett | 441 | 221 |
| Joseph Delaney | Cascade/McNett | 479 | 240 |
| Joseph Fox | Cascade | 407 | 203.5 |
| Teuch Francis | Cascade | 408 | 204 |
| Mary Garrity | Cascade | 432 | 216 |
| David George | Cascade/McNett | 413 | 206.5 |
| Edward George | Cascade | 416 | 208 |
| Thomas George | McIntyre/Cascade | 439 | 220 |
| Michael Gratz | McIntyre | 522 | 261 |
| William Gray | McNett | 408 | 204 |
| Josiah Harmer | Cascade | 423 | 211.5 |
| John Hawkins | Cascade | 485 | 242.5 |
| Michael Hillegas | McNett/Cascade | 409 | 204.5 |
| James Hutchinson | Lewis | 494 | 247 |

Lycoming County Prothonotary Civil E-Filed - 13 Nov 2023 02:51:45 PM

| | | | |
|---|---|---|---|
| William Hutchinson | McNett | 458 | 229 |
| William James | Gamble | 450 | 225 |
| William Jones | McNett | 431 | 215.5 |
| Hugh Lennox | McNett | 175 | 88 |
| Aaron Levy | McIntyre | 304 | 152 |
| Sampson Levy | Cascade | 441 | 220.5 |
| William Lewis | Cascade | 475 | 237.5 |
| Daniel Long | McIntyre/McNett | 411 | 205.5 |
| James Miles | McIntyre | 439 | 219.5 |
| Samuel Miles Jr. | McIntyre | 384 | 192 |
| Peter Miller | Cascade | 450 | 225 |
| Jacob Morgan | McIntyre | 378 | 189 |
| Rowland Perry | Cascade | 446 | 223 |
| John Price | McIntyre | 431 | 215.5 |
| Joseph Rakestraw | McNett | 431 | 215.5 |
| Robert Rankin | Cascade/McNett | 431 | 215.5 |
| William Rawle | Cascade | 458 | 229 |
| James Reynolds | Cascade | 453 | 226.5 |
| Thomas Reynolds | Cascade | 408 | 204 |
| Algernon Roberts | McIntyre | 377 | 188.5 |
| Robert Shaw | McIntryre | 387 | 193.5 |
| William Shaw | McNett | 450 | 225 |
| Abraham Singer | McIntyre | 431 | 215.5 |
| John Singer | McIntyre | 256 | 128 |
| Benjamin Smith | Cascade | 439 | 219.5 |
| Robert Smith | McIntyre/McNett | 467 | 233.5 |
| Walter Stewart | McIntyre | 431 | 215.5 |
| William Stewart | McIntryre | 400 | 200 |
| Jonathan Supplee | Cascade | 379 | 189.5 |
| Joseph Thomas | Cascade | 436 | 218 |
| Edward Tilgham | Cascade | 443 | 221.5 |
| George Tudor | Cascade | 448 | 224 |
| 1602 | Pine | 950 | 831 |
| 1605 | Pine | 817 | 715 |
| 4788 | Jackson | 1,127 | 1,127 |
| 4789 | Jackson | 730 | 730 |
| 5753 | Lewis | 717 | 627 |
| John Potter | Plunketts Creek | 551 | 551 |
| William Harrison | Plunketts Creek | 518 | 518 |
| John Smith | McIntyre | 402 | 402 |
| Robert Straub | Lewis | 31 | 27 |
| 5651 | McIntyre | 80 | 40 |
| 5658 | McIntyre | 202 | 202 |
| TOTAL | | 40,523 | 25674 |